ROBERT A. GINSBURG *v.* CADLE COMPANY
(AC 19915)

Landau, Zarella and O'Connell, Js.

Argued October 17, 2000—officially released January 16, 2001

*Kenneth A. Votre,* for the appellant (plaintiff).

*Timothy D. Miltenberger,* for the appellee (defendant).

*Opinion*

O'CONNELL, J. The plaintiff, Robert A. Ginsburg,[1] appeals from the judgment of the trial court denying his amended petition for a new trial on the ground of newly discovered evidence.[2] He claims that the court improperly (1) held that he failed to sustain his burden

[1] The plaintiff and the defendant in the present case were, respectively, the defendant and the plaintiff in a prior, related case. See *Cadle Co.* v. *Ginsburg,* 51 Conn. App. 392, 721 A.2d 1246 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999). In an effort to avoid confusion, in this opinion we refer to the parties by name, rather than as the plaintiff and the defendant.

[2] General Statutes § 52-270 (a) provides in relevant part: "The Superior Court may grant a new trial of any action that may come before it, for . . . the discovery of new evidence . . . ."

of proof that there was newly discovered evidence, (2) held that he had the burden of due diligence in discovering untrue testimony and (3) failed to find that untrue testimony at the original trial in this matter affected the outcome of the case. We affirm the judgment of the trial court.

The genesis of this appeal is a promissory note from Ginsburg to Great Country Bank. A similar note was signed by his uncle, Gary Ginsberg.[3] The defendant, Cadle Company (Cadle) purchased both notes from Great Country Bank as part of a package of notes. Cadle thereafter brought separate actions against Robert Ginsburg and Gary Ginsberg. A judgment of $161,643.88 plus $15,000 in attorney's fees rendered in the action against Robert Ginsburg was affirmed on appeal in *Cadle Co.* v. *Ginsburg*, 51 Conn. App. 392, 721 A.2d 1246 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999).

Whether Cadle was a holder in due course of Ginsburg's note was at issue in the former trial. In that action, the court determined that Cadle was a holder in due course because it took the note for value, in good faith and without notice of any defenses. Id., 395–96. In the present case, Ginsburg attempted to show that Cadle did not take the note for value and, therefore, could not be a holder in due course.[4] The court was not persuaded and rendered judgment denying Ginsburg's petition for a new trial.

---

[3] Robert A. Ginsburg and his uncle Gary Ginsberg do not spell their last names identically.

[4] A purchaser of an instrument as part of a bulk transaction may become a holder in due course unless the transaction was not in the regular course of business of the transferor. See General Statutes § 42a-3-302 (c) (ii); cf. *Rosa* v. *Colonial Bank*, 207 Conn. 483, 488–89, 542 A.2d 1112 (1988). In the present case, the court found that there was no evidence before it or in the prior case that the transaction by which Cadle acquired the note at issue was other than in the ordinary course of the business of Great Country Bank.

Ginsburg claims to have shown that there was newly discovered evidence on the basis of a comparison of the testimony, at the former trial, of Jeffrey Joseph, one of Cadle's employees, and Joseph's later testimony in a deposition in the Gary Ginsberg case.

Ginsburg contends that Joseph's deposition testimony is new evidence of the amount that Cadle paid for Ginsburg's promissory note and, thus, is new evidence that Cadle was not a holder in due course. The court disagreed with Ginsburg because he had "the burden of proving that the evidence was in fact newly discovered; that it would be material to the issue on a new trial; that it could not have been discovered and produced on the former trial by the exercise of due diligence; that it is not merely cumulative; and that it is likely to produce a different result in a new trial." *Kubeck* v. *Foremost Foods Co.*, 190 Conn. 667, 670, 461 A.2d 1380 (1983).

Joseph testified as follows in the prior action:

"Q. And I think you testified that this [promissory note] was acquired as a package of several loans; is that fair to say?

"A. I believe it's over a hundred.

"Q. *And, sir, can you tell us what the Cadle Company paid for this obligation?*

"A. *I have no idea. Again, it is a package of loans. There is no way of putting a dollar amount on just this loan.*

"The Court: So, what you are saying, sir, is not that you don't remember, but that the calculation can't be made because there is one price for the entire package; is that correct?

"Witness: Yes, sir.

"The Court: Thank you." (Emphasis added.)

Joseph testified as follows in a deposition in the Gary Ginsberg case:

"Q. So, is it fair to say that Cadle paid one cent on the dollar on Mr. [Gary] Ginsberg's note?

"A. That was the average we paid for the entire pool.

"Q. *Do you know how much Cadle specifically paid for Mr. [Gary] Ginsberg's note?*

"A. *No.*

"Q. Do you know anyone who does know that information?

"A. Again, we acquired this note in a bulk sale, in a bulk purchase, so that one particular note—there was no price for that one. Again, we based our bid on a portfolio of loans." (Emphasis added.)

In its memorandum of decision, the court concluded: "There is little new in the evidence that [Ginsburg] claims is newly discovered. At the trial of the underlying action, Mr. Joseph testified that [Ginsburg's] promissory note was acquired as part of a 'package' which contained over a hundred other loans. Cadle had bid on the package as a whole. Joseph had 'no idea' what Cadle paid for just [Ginsburg's] loan because it was in 'a package of loans. There's no way of putting a dollar amount on just this loan.'

"In his subsequent deposition, Joseph stated that the transaction in which Cadle purchased the note was a 'bulk sale transaction' which included 'approximately 150' other promissory notes. The nature of the transaction, however, was evident from his trial testimony in which he described the purchase as 'a package.'"

In denying the petition, the court held that the claimed newly discovered evidence was cumulative of

evidence produced at the prior trial. A new trial is not required if the evidence is merely cumulative or duplicative. *Carrione* v. *State*, 3 Conn. App. 633, 635, 491 A.2d 421, cert. denied, 197 Conn. 801, 495 A.2d 280 (1985). Where essentially the same evidence is submitted with somewhat more detail, it is, ordinarily, nonetheless cumulative. *Dortch* v. *State*, 142 Conn. 18, 26–27, 110 A.2d 471 (1954).

Moreover, "[t]o entitle a party to a new trial for newly-discovered evidence, it is indispensable that he should have been diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied upon could have been known with reasonable diligence, a new trial will not be granted." *White* v. *Avery*, 81 Conn. 325, 328, 70 A. 1065 (1908).

A new trial will be granted on the basis of newly discovered evidence only if: (1) the newly discovered evidence is in fact newly discovered such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not cumulative; and (4) it is likely to produce a different result in a new trial. *Williams* v. *Commissioner of Correction*, 41 Conn. App. 515, 528 n.8, 677 A.2d 1 (1996), appeal dismissed, 240 Conn. 547, 692 A.2d 1231 (1997).

"The function of a court at a hearing for a new trial is to determine whether the evidence presented at the hearing considered with the evidence presented at the original trial warrants the granting of a new trial. That determination is within the sound discretion of the court. *Pass* v. *Pass*, [152 Conn. 508, 510, 208 A.2d 753 (1965)]; *Krooner* v. *State*, 137 Conn. 58, 62 [75 A.2d 51 (1950)]; *Gannon* v. *State*, 75 Conn. 576, 578–79 [54 A. 199 (1903)]." *Reilly* v. *State*, 32 Conn. Sup. 349, 356, 355 A.2d 324 (1976). The basic question that the court has to decide is whether, on all of the evidence, an

injustice has been done; *Turner* v. *Scanlon*, 146 Conn. 149, 163, 148 A.2d 334 (1959); and whether it is probable that on a new trial a different result would be reached. *Taborsky* v. *State*, 142 Conn. 619, 623, 116 A.2d 433 (1955).

"A petition for a new trial is addressed to the discretion of the trial court and will never be granted except upon substantial grounds. As the discretion which the court is called upon to exercise is not an absolute but a legal one, we will upon appeal set aside its action when it appears that there was a misconception on its part as to the limits of its power, that there was error in the proceedings preliminary to the exercise of its discretion, or that there was a clear abuse in its exercise of its discretion. *Wood* v. *Holah*, 80 Conn. 314, 315, 68 A. 323 [1907]." (Internal quotation marks omitted.) *Kubeck* v. *Foremost Foods Co.*, supra, 190 Conn. 669–70, quoting *E. M. Loew's Enterprises, Inc.* v. *Surabian*, 146 Conn. 608, 610, 153 A.2d 463 (1959).

After concluding that there was no new evidence that would warrant a new trial, the court proceeded to analyze the law pertaining to the due diligence requirement as well as the law pertaining to the requirement that any new evidence would likely produce a different result in a new trial. We have no quarrel with the court's discussion but, for appellate purposes, the finding that there was no new evidence ended the case.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Ginsburg's second and third issues concern whether the court, after hearing the evidence, properly concluded that Joseph's testimony at the prior trial was false or inadvertently untrue. The court heard Ginsburg's evidence and found that Joseph's testimony at the prior trial " 'appears to be fair and truthful.' " That was part of the court's ultimate conclusion that there was no new evidence.