JEROME G. TERRACINO ET AL. *v.* FAIRWAY ASSET MANAGEMENT, INC.
(AC 21888)

Schaller, Dranginis and Bishop, Js.

Argued October 15, 2002—officially released February 11, 2003

*Michael S. Lynch,* for the appellants (plaintiffs).

*Michael J. Mannion,* for the appellee (defendant).

*Opinion*

DRANGINIS, J. The plaintiffs, Jerome G. Terracino and Guardian Systems, Inc. (Guardian), appeal from the judgment of the trial court denying their petition for a new trial, filed pursuant to General Statutes § 52-270, on the ground of newly discovered evidence. On appeal, the plaintiffs claim that the court improperly (1) concluded that they failed to exercise due diligence in their efforts to discover the new evidence prior to trial and (2) found that it was not likely that the newly discovered evidence, if presented during a new trial, would have led the court to reach a different result in the matter. We affirm the judgment of the trial court.

This appeal arises out of the plaintiffs' prior appeal to this court in *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.,* 66 Conn. App. 397, 784 A.2d 970, cert. granted, 258 Conn. 949, 788 A.2d 98

(2001) (argued January 13, 2003).[1] The plaintiffs in the present case were two of five defendants[2] in *Federal Deposit Ins. Corp.*

The relevant background facts are set out in *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, supra, 66 Conn. App. 397, as follows. "On July 19, 1991, Mutual [Communications Associates, Inc. (Mutual)] entered into a loan agreement with Brookfield Bank (Brookfield) to borrow $270,000. Mutual, through two of its corporate officers, [Richard T.] DeMarsico and Terracino, signed a promissory note for the loan amount. Mutual secured the debt by a mortgage on one of its properties. DeMarsico, Terracino and [Robert] Rossman, another corporate officer, signed personal guarantees as well. Terracino and Rossman signed an additional guarantee as principals and officers of Guardian, an alarm company in which they were the only shareholders.

---

[1] Our Supreme Court granted certification from this court's decision limited to the following issue: "Did the Appellate Court properly conclude that, under the applicable equitable principles, the plaintiff was entitled to the full amount of the deficiency judgment in this case?" *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, 258 Conn. 949, 788 A.2d 98 (2001).

We note at the outset that our Supreme Court's grant of certification to appeal limited to the previously stated issue does not moot the present appeal, which concerns the trial court's denial of the plaintiffs' petition for a new trial. "[A]lthough [a petition for a new trial] is collateral to the action in which a new trial is sought, it is by its nature a distinct proceeding." (Internal quotation marks omitted.) *Cadle Co.* v. *Ginsburg*, 51 Conn. App. 392, 409 n.5, 721 A.2d 1246 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999). Accordingly, a petition for a new trial must be determined solely on its own issues and without regard to the questions raised by an appeal from the judgment in the original action. *Dudley* v. *Hull*, 105 Conn. 710, 714, 136 A. 575 (1927).

[2] In *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, supra, 66 Conn. App. 397, the defendants at trial were Terracino, Guardian, Mutual Communications Associates, Inc., Richard T. DeMarsico and Robert Rossman. Terracino and Guardian were the only defendants to appeal from the judgment in that case, and they are the plaintiffs in the present case.

"On May 8, 1992, the Federal Deposit Insurance Corporation (FDIC) took possession of Brookfield's assets, including the promissory note, mortgage and guarantees. At about the same time, Mutual defaulted on the loan. On or about November 30, 1994, the FDIC commenced a foreclosure action against Mutual and the other defendants. A judgment of foreclosure by sale was rendered on December 16, 1996.

"Thereafter, the judgment was opened and a judgment of strict foreclosure was rendered with law days commencing March 25, 1997. Prior to the judgment of strict foreclosure, JLM Services Corporation (JLM) succeeded the FDIC as plaintiff, and title vested in JLM when Mutual failed to redeem its equity within the set law days. JLM filed a motion for a deficiency judgment on April 1, 1997." Id., 399.

While JLM's motion was pending, relations between guarantors Terracino and Rossman deteriorated, as the two became embroiled in various business disputes. Also, during that time, Rossman allegedly asked his friend and attorney, Andrew Buzzi, Jr., to attempt to purchase the note, guarantees and deficiency claim from JLM on his behalf. JLM eventually sold the note, guarantees and deficiency claim to "Andrew J. Buzzi, Jr., Trustee" for $30,000. Buzzi, in turn, assigned the note, guarantees and deficiency claim to Consolidated Asset Management, LLC (Consolidated), a limited liability company that he had formed with Rossman's wife, Catherine Rossman. "Thereafter, Consolidated assigned the note, guarantees and deficiency claim to Fairway Asset Management, Inc. (Fairway), [which became] the substituted plaintiff and judgment creditor." Id., 400.

"The defendants[3] filed three special defenses, a cross complaint and a counterclaim in response to the motion

---

[3] See footnote 2.

for a deficiency judgment. The special defenses, as amended, alleged facts that occurred subsequent to the judgment of strict foreclosure. The defendants claimed that Rossman breached the fiduciary duty that he owed them because of his role in assigning the note to Consolidated . . . . The counterclaim and cross complaint . . . requested a judgment that Fairway and its predecessors could enforce the note only to claim a proportionate contribution toward funds actually paid on behalf of Rossman for the note, or a judgment declaring the note null and void."[4] Id. At trial, Buzzi testified that he did not purchase the note on behalf of Rossman. He testified, instead, that he had purchased the note on behalf of Consolidated.

"The court granted the motion for a deficiency judgment. It rejected the third special defense and concluded that there was insufficient evidence to find that either Buzzi or Catherine Rossman acted as Rossman's agent [in purchasing the note from JLM], and, therefore, there was no need to address the defendants' other claims premised on a theory of agency. The court also concluded that the defendants had not met their burden of proof on the counterclaim and cross claim." Id. On or about January 28, 2000, the court rendered judgment for the substitute plaintiff, Fairway, in the amount of $324,631.08, plus attorney's fees. Thereafter, Terracino and Guardian appealed to this court from that judgment. This court, with Chief Judge William J. Lavery dissenting, affirmed the judgment of the trial court. Id., 406.

While the appeal in *Federal Deposit Ins. Corp.* was pending, the plaintiffs, Terracino and Guardian, filed

---

[4] The defendants claim was as follows. The note was purchased on behalf of Rossman, who was a coguarantor. A coguarantor is not entitled to pursue a deficiency judgment against other coguarantors. A coguarantor may seek only contribution toward the funds expended to purchase the note. Fairway purchased the note from Rossman. Accordingly, Fairway only purchased what Rossman had, which was a right to seek contribution.

the present petition for a new trial on the ground that they had discovered new evidence that likely would have produced a different result had it been presented to the court during the trial. That new evidence consisted of three pieces of correspondence, which, some four months after judgment had entered in the original action, counsel for the plaintiffs received from the law firm that had represented JLM in conjunction with its sale of the note, guarantees and deficiency claim to Buzzi. In their petition, the plaintiffs claimed that the new evidence demonstrated that JLM had accepted Rossman's offer to purchase the note and, therefore, the defenses that the plaintiffs raised in the original trial were applicable. They also claimed that Buzzi, Rossman and Rossman's wife, Catherine Rossman, prevented them from discovering that correspondence before or during the trial, and that the correspondence demonstrated that Buzzi and the Rossmans testified falsely at trial that Buzzi had not purchased the note, guarantees and deficiency claim from JLM on behalf of Rossman. Finally, the plaintiffs claimed that the testimony of Buzzi and the Rossmans was intended to mislead the court and to prevent the plaintiffs from fairly presenting their defenses to Fairway's claims.

In a memorandum of decision filed March 8, 2001, the court denied the plaintiffs' petition for a new trial. It concluded that although the evidence presented by the plaintiffs had, in fact, been newly discovered and would be material to the issue of whether Buzzi had purchased the note on behalf of Rossman, the plaintiffs failed to demonstrate that they had exercised due diligence in their efforts to discover that evidence prior to trial. The court further concluded that the plaintiffs also failed to establish that had the newly discovered evidence been produced at the trial, it likely would have produced a different result. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court improperly concluded that they had failed to exercise due diligence in their efforts to discover the new evidence prior to the 1999 trial. The plaintiffs advance two arguments in support of their claim. First, they argue that the court improperly applied a legal standard of due diligence to the conduct of the plaintiffs' counsel, which was greater than that required by law. Second, they argue that the court improperly determined that the plaintiffs' counsel failed to exercise due diligence in conducting pretrial discovery, particularly in failing to discover the three pieces of correspondence relating to JLM's sale of the note, guarantees and deficiency claim to Buzzi. We address each of those arguments in turn.

The following additional facts are relevant to our analysis of the plaintiffs' due diligence claim. During the fall of 1997, in preparation for the original trial, attorney A. Reynolds Gordon, counsel for the plaintiffs, issued two subpoenas and deposition notices, both of which were directed at Buzzi. One notice was directed at Buzzi in his individual capacity, and the other notice was directed at Buzzi as the representative of Consolidated, the limited liability company he had formed with Catherine Rossman. The subpoena directed at Buzzi in his individual capacity directed him to bring to the deposition his files and records relating to the purchase and negotiations to purchase, sell or enforce the note that was the subject of the foreclosure action. The subpoena directed at Consolidated compelled Buzzi to bring to the deposition all files and records relating to the negotiations, purchase, sale or enforcement of the note. Consolidated was represented at the deposition by attorney Gerald Hecht.[5]

---

[5] In the underlying action, Hecht filed an appearance solely on behalf of Consolidated. He did not file an appearance on behalf of Buzzi in either Buzzi's individual or representative capacities.

Although Buzzi brought all of the applicable documentation with him to the deposition, he refused to allow Gordon to review the files in their entirety at that time. Buzzi claimed that some of the documentation in the files was protected by an attorney-client privilege and stated that he was not about to give the plaintiffs' counsel "carte blanche" to peruse his client's files. Accordingly, Gordon, Buzzi and Hecht came to an agreement regarding the production of the documentation contained in Buzzi's files, which was as follows. Buzzi's files were spread out on Gordon's conference table. In response to questions posed by Gordon to Buzzi, either Hecht or Buzzi would remove the applicable correspondence from the files and hand it to Gordon.

During the course of the deposition, Gordon asked Buzzi about his communications with attorney Darcy Kochiss Ellis, the attorney who had represented JLM in conjunction with its sale of the note. In response, Buzzi thumbed through one of the files and produced a letter dated June 4, 1997, which he indicated was the first communication he had with Ellis regarding the sale of the note. Thereafter, the following colloquy took place between Gordon and Buzzi:

"[Gordon]: Is there more correspondence in negotiations with attorney Ellis other than the first letter?

"[Buzzi]: Yeah, there is.

"[Gordon]: Do you want to pull that out, please. Can I peek at the ones you have pulled out just to save us a minute.

"[Buzzi]: Just give me a minute.

"[Gordon]: Sure."

Buzzi looked through his file and handed a group of letters, all of which contained various June, 1997 dates, to Gordon. None of those letters indicated that Buzzi had purchased the note, guarantees and deficiency claim on behalf of Rossman. Gordon marked the group of letters as exhibit four.[6]

The colloquy then continued as follows:

"[Gordon]: Showing the witness exhibit four for identification, do these represent correspondence between you and Darcy Ellis representing JLM in the spring and summer of 1997?

"[Buzzi]: Yes."

Gordon did not further pursue that line of questioning. He also did not ask Buzzi if he had any additional documentation relating to the sale of the note.

Buzzi also was subpoenaed to testify at trial concerning his negotiations with Ellis. That subpoena directed him to bring to court the files containing the correspondence relating to the note. Buzzi brought the applicable files, which contained all of the relevant correspondence, including the correspondence at issue here. The parties agreed at trial to employ a procedure for the production of file documentation that was similar to the procedure employed at the deposition, whereby Gordon would ask questions and, in response, Buzzi would produce for Gordon the applicable documentation. Although Buzzi testified at trial regarding his role

---

[6] Gordon stated in relevant part: "I'm going to mark as exhibit four for identification a group of letters between Mr. Buzzi and Darcy Ellis . . . . There are six letters in all. They are June 5, 1997, Buzzi to Ellis; June 5, 1997, Buzzi to Ellis; June 6, 1997, Ellis to Buzzi; June 17, 1997, Buzzi to Ellis; June 17, 1997, Ellis to Buzzi; June 24, 1997, Buzzi to Ellis. All of these are one page letters, and they are being marked as a group."

in purchasing the note from JLM, Gordon never asked Buzzi if he had given Gordon all of the correspondence that he, Buzzi, had in his files relating to the sale and purchase of the note, and Buzzi never volunteered that he had any additional correspondence.[7] Gordon never contacted or deposed Ellis, nor did he subpoena her at trial.

Sometime after judgment entered in favor of Fairway in the original trial, at the urging of the plaintiffs, Gordon contacted the law firm where Ellis had worked at the time JLM sold the note to Buzzi. In May, 2000, Gordon learned from a representative of that firm that there were three additional pieces of correspondence relating to JLM's sale of the note, which Gordon had never received from Buzzi.[8]

At the hearing on the plaintiffs' petition, those three pieces of correspondence were introduced and marked as exhibits one, two and three. The piece of correspondence marked exhibit one is a July 2, 1997 letter from Ellis to Buzzi, which seems to indicate that JLM may have accepted the last offer made by Buzzi on behalf of his friend and client, Robert Rossman.[9]

---

[7] At the hearing on the petition, Buzzi testified that he had no recollection as to which documents he had shown to Gordon at the deposition or as to which documents he had discussed during his testimony at trial. Buzzi further testified that he was "surprised" to learn that the correspondence at issue here, exhibits one, two and three, were not on the list of exhibits compiled at the time of the deposition.

[8] At the hearing on the petition, Buzzi conceded that the correspondence at issue fell within the plaintiffs' demands to produce documentation relating to the sale of the note.

[9] Exhibit one is a copy of a letter from Ellis to Buzzi, which, in the lower left corner, contains a signature line for "Robert Rossman" to acknowledge the terms of acceptance contained in the body of the letter. Exhibit two is identical to exhibit one, except that Robert Rossman's name has been deleted from below the signature line and "Andrew J. Buzzi, Jr., Trustee," has been inserted in its place. That letter bears Buzzi's signature, as trustee. Exhibit three is a facsimile cover sheet from Buzzi to Ellis, which references the acceptance of the July 2, 1997 offer.

Additionally, at the petition hearing, Gordon conceded that he had begun discovery in the fall of 1997, in preparation for the 1999 trial, and, therefore, he had plenty of time to contact the law firm where Ellis had worked before the trial in the underlying action had begun. He explained that he did not contact that law firm because, although he initially suspected that Buzzi had purchased the note on behalf of Robert Rossman, none of the documentation Buzzi surrendered at the deposition indicated as much. He further explained that he trusted that Buzzi, a member of the bar, would have already provided him with all of the applicable correspondence at the time of the deposition and that he had no reason to doubt that Buzzi had not done so.

"Our standard of review of a court's decision with respect to a petition for a new trial is the abuse of discretion standard. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *Fitzpatrick* v. *Hall-Brooke Foundation, Inc.*, 72 Conn. App. 692, 697, 807 A.2d 480, cert. denied, 262 Conn. 914, 811 A.2d 1291 (2002).

A petition for a new trial is governed by § 52-270 (a), which provides in relevant part: "The Superior Court may grant a new trial of any action that may come before it, for . . . the discovery of new evidence . . . ." "The standard that governs the granting of a petition for a new trial based on newly discovered evidence is well established. The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, *such that it could not have been discovered earlier by the exercise of due diligence*; (2) it would be material on a new trial; (3) it is not

merely cumulative; and (4) it is likely to produce a different result in a new trial." (Emphasis added; internal quotation marks omitted.) *Fisher* v. *State*, 33 Conn. App. 122, 124, 634 A.2d 1177 (1993); see also *Kubeck* v. *Foremost Foods Co.*, 190 Conn. 667, 670, 461 A.2d 1380 (1983). Proof that the petitioner exercised due diligence to discover the evidence prior to trial is a condition precedent to successfully prosecuting a petition for a new trial under § 52-270. *Fitzpatrick* v. *Hall-Brooke Foundation, Inc.*, supra, 72 Conn. App. 698; *Ginsburg* v. *Cadle Co.*, 61 Conn. App. 388, 392, 764 A.2d 210, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001); *Jacobs* v. *Fazzano*, 59 Conn. App. 716, 724, 757 A.2d 1215 (2000).

## A

The plaintiffs first contend that the court improperly applied a legal standard of due diligence to the conduct of the plaintiffs' counsel, which was greater than that required by law. In support of their claim, they argue that the court improperly failed to balance the equities involved in making a determination regarding due diligence because, although the court considered Gordon's obligation to discover the evidence prior to trial, it refused to consider Buzzi's obligation, as an attorney and officer of the court, to advise Gordon that he had not received all of the correspondence relating to the sale of the note. In other words, the plaintiffs argue that as a matter of law, the court improperly placed the burden of proving due diligence solely on them rather than distributing that burden between Gordon and Buzzi because both had obligations regarding the evidence at issue.[10] Because that issue presents a ques-

---

[10] The plaintiffs rely on the Rules of Professional Conduct in assigning the respective obligations of Gordon and Buzzi. The plaintiffs indicate that Gordon's obligation is to be found in rule 1.3 of the Rules of Professional Conduct, which requires that "[a] lawyer shall act with reasonable diligence . . . in representing a client." They indicate that Buzzi's obligation is to found in rule 8.4 (3), which provides that a lawyer must not "[e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

tion of law, it is subject to plenary appellate review. See *Feldman* v. *Sebastian*, 261 Conn. 721, 725, 805 A.2d 713 (2002).

Contrary to the plaintiffs' argument, we conclude that the court did not hold the plaintiffs' counsel to a legal standard of due diligence that was greater than that required by law. The plaintiffs' argument that an appropriate determination of due diligence required consideration of the fact that Buzzi never indicated to Gordon that he had additional correspondence "totally overlooks the requisite that *the party seeking the new trial* and *not* the other party or his attorney in the underlying action, is required to exercise due diligence as a condition precedent to obtaining relief under § 52-270." (Emphasis added.) *Jacobs* v. *Fazzano*, supra, 59 Conn. App. 725. In a hearing on a petition for a new trial, "[t]he burden of showing due diligence [rests] solely and throughout on the plaintiff." Id., 727.

The plaintiffs are quick to point out that a petition for a new trial is equitable in nature; see *State* v. *Grimes*, 154 Conn. 314, 325, 228 A.2d 141 (1966); *Labow* v. *Labow*, 69 Conn. App. 760, 765, 796 A.2d 592, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002); and that in this case, equity demands that the plaintiffs be granted a new trial because Buzzi was less than forthcoming with the relevant evidence. They fail, however, to point out that as an initial matter, "[h]e who seeks equity must do equity . . . ." (Internal quotation marks omitted.) *Jacobs* v. *Fazzano*, supra, 59 Conn. App. 730, citing 2 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 385 et seq.

In this case, the equity to be done by the plaintiffs *before* the court was required to consider the equities involved in their petition was that they demonstrate that they had exercised due diligence, meaning that they did all that was reasonable to discover the "new

evidence" prior to trial. See *Jacobs* v. *Fazzano*, supra, 59 Conn. App. 725. It was not *until* the plaintiffs met that burden that the court was authorized to exercise its authority under § 52-270 to consider the equitable remedy sought by the plaintiffs, namely a new trial. See id., 722–24.

Whether the plaintiffs fulfilled their obligation to do all that was reasonable to discover the evidence prior to trial is not to be informed by Buzzi's conduct.[11] See id., 730–31. It is the conduct of the plaintiffs that is "subject to scrutiny, since he who claims equity must do equity." (Internal quotation marks omitted.) Id., 732. The plaintiffs here attempt to shift to the defendants their burden of proving that they exercised due diligence to discover the evidence by claiming that Buzzi failed to advise Gordon that additional evidence existed. The plaintiffs' attempt to do so demonstrates their failure to recognize that due diligence is always the petitioner's burden and is *not to be shared with the opposing party*.[12] See id., 725–26. Accordingly, we

---

[11] The plaintiffs seem to claim that Buzzi violated rule 8.4 (3) of the Rules of Professional Conduct in failing to provide them with all of the applicable correspondence and, as a result, that they are entitled to a new trial.

[12] This court does not condone the intentional withholding of evidence. We note, however, that the court made no finding as to whether Buzzi intentionally concealed any of the correspondence indicating that JLM may have accepted Buzzi's offer on behalf of Rossman. The court also made no finding that either Buzzi or the Rossmans had testified falsely at trial. As a reviewing court, "we must be mindful of the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." (Internal quotation marks omitted.) *In re James L.*, 55 Conn. App. 336, 345, 738 A.2d 749, cert. denied, 252 Conn. 907, 743 A.2d 618 (1999).

Furthermore, even if the court had found that Buzzi had intentionally concealed that evidence, that finding alone would not relieve the plaintiffs of their burden to exercise due diligence to discover the evidence. Doing so would take the plaintiffs' "obligation to exercise due diligence out of the calculus . . . ." *Jacobs* v. *Fazzano*, supra, 59 Conn. App. 731. Such a finding of intentional concealment would relate only to whether the correspondence " *'could not have been discovered earlier'* "; (emphasis added) *Fisher* v. *State*, supra, 33 Conn. App. 124; despite the plaintiffs' exercise of due diligence.

conclude that the court required no more of the plaintiffs than the law already requires, namely that it is solely the plaintiffs' burden to prove that they exercised due diligence to discover the evidence prior to trial, which is in accordance with § 52-270 and the applicable case law. See *Fitzpatrick* v. *Hall-Brooke Foundation, Inc.*, supra, 72 Conn. App. 698; *Ginsburg* v. *Cadle Co.*, supra, 61 Conn. App. 392; *Jacobs* v. *Fazzano*, supra, 59 Conn. App. 724.

B

The plaintiffs next contend that the court improperly found that Gordon's failure to discover the three pieces of correspondence prior to trial was due to a lack of due diligence rather than to Buzzi's failure to produce the correspondence. They claim that the court should have found that Gordon's failure to discover the correspondence was due solely to Buzzi's attempts to conceal it, both at the deposition and at trial, and not due to any lack of diligence on Gordon's part and, therefore, that their petition should have been granted. We disagree.

The plaintiffs challenge the court's factual finding regarding due diligence. "A factual finding may be rejected by this court only if it is clearly erroneous." (Internal quotation marks omitted.) *Jucker* v. *Jucker*, 190 Conn. 674, 679, 461 A.2d 1384 (1983). "Due diligence does not require omniscience. Due diligence means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *Jacobs* v. *Fazzano*, supra, 59 Conn. App. 725. "[T]o entitle a party to a new trial for newly-discovered evidence, it is indispensable that he should have been diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied upon could have been known with reasonable diligence, a new trial will not be granted." (Internal

quotation marks omitted.) *Ginsburg* v. *Cadle Co.*, supra, 61 Conn. App. 392.

The plaintiffs contend that they did everything reasonable to discover the new evidence prior to trial because they deposed Buzzi and, at the deposition, asked him for correspondence relating to the sale of the note, but that Buzzi simply failed to turn over all of the relevant correspondence. They maintain that on the basis of those facts, the court should have found that they satisfied the requirement of due diligence because it was reasonable for Gordon to rely on Buzzi's responses to Gordon's requests for documentation. They claim that it was reasonable for Gordon to do so because Buzzi is a member of the bar and is under a duty not to engage in conduct involving misrepresentation. See Rules of Professional Conduct 8.4 (3). In the context of the facts presented here, we disagree that the court's finding that relying on Buzzi's responses alone did not satisfy the plaintiffs' burden of doing "everything reasonable" to discover the evidence was clearly erroneous.

As the court noted, although Buzzi was not a party or counsel in the original action, he had represented persons or entities that had been involved in the transaction that was documented in his files. Accordingly, Buzzi was not a fully objective witness. The court also noted that at the deposition, after Buzzi had produced a number of letters relating to JLM's sale of the note to Buzzi, Gordon never asked Buzzi to review his files to determine if he had surrendered all of the applicable correspondence. In so noting, the court did not, as the plaintiffs claim, impose on Gordon, the plaintiffs' counsel, some legal duty to distrust another member of the bar. We conclude, instead, that the court simply recognized that Buzzi, although he is an attorney, is as capable as any other human being of misunderstanding a question that has been posed to him or of overlooking some

relevant piece of documentation. Furthermore, at trial, Gordon had a second opportunity to ask Buzzi whether he had reviewed his files for any additional correspondence or whether he had given Gordon all of the correspondence relating to the sale of the note. Gordon never asked. Finally, and importantly, the court noted that months after judgment had entered in the original trial, Gordon obtained exhibits one, two and three from a source other than Buzzi, the law firm where Ellis had worked at the time she had represented JLM. Gordon, himself, admitted that he could have contacted that law firm prior to trial. He did not do so.

"The question which must be answered [in making a determination regarding due diligence] is not what evidence might have been discovered, but rather what evidence would have been discovered by a reasonable plaintiff by persevering application, [and] untiring efforts in good earnest." (Internal quotation marks omitted.) *Kubeck* v. *Foremost Foods Co.*, supra, 190 Conn. 672. The plaintiffs in the present case can hardly argue that the underlying facts show that they employed " 'persevering application [and] untiring efforts' "; id.; to discover the correspondence at issue. The court's finding that they failed to satisfy the requirement of due diligence was, therefore, not clearly erroneous.

As previously stated, our standard of review of a court's denial of a petition for a new trial is the abuse of discretion standard. *Fitzpatrick* v. *Hall-Brooke Foundation, Inc.*, supra, 72 Conn. App. 697. "[I]n determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Jacobs* v. *Fazzano*, supra, 59 Conn. App. 731. On the basis of our review of the record, we conclude that the court could have reasonably determined that the plaintiffs were not entitled to a new trial because they failed to meet their burden of establishing that

they exercised due diligence to discover the evidence at issue prior to trial. The court, therefore, did not abuse its discretion in denying the plaintiffs' petition for a new trial.

## II

After concluding that the plaintiffs failed to exercise due diligence to discover the new evidence prior to trial, the court proceeded to analyze whether the newly discovered evidence would have led the court to reach a different conclusion if it were presented during a new trial. Because due diligence is a condition precedent to successfully prosecuting a petition for a new trial; *Fitzpatrick* v. *Hall Brooke Foundation, Inc.*, supra, 72 Conn. App. 698; and because we have already concluded that the court correctly concluded that the plaintiffs failed to satisfy the due diligence requirement, we need not address whether the newly discovered evidence would have led the court to reach a different result in a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.