JEROME G. TERRACINO ET AL. *v.* ANDREW J. BUZZI
ET AL.
(AC 30543)

Lavine, Beach and Robinson, Js.

Argued January 5—officially released June 22, 2010

*Michael S. Lynch*, for the appellants (plaintiffs).

*Leonard M. Isaac*, for the appellee (named defendant).

*Paul A. Sobel*, for the appellees (defendant Robert Rossman et al.).

*Opinion*

BEACH, J. The plaintiffs, Patricia Morasco, the administratrix of the estate of Jerome G. Terracino,[1] and Guardian Systems, Inc. (Guardian), appeal from

---

[1] During the pendency of the lawsuit, Terracino died, and Patricia Morasco, his wife, was substituted as a plaintiff as the administratrix of his estate. We refer in this opinion to Morasco and Guardian as the plaintiffs.

the judgment of the trial court rendered after it granted, in part, the motions for summary judgment filed by the defendants, Andrew J. Buzzi, Catherine Rossman and Robert Rossman, and after the plaintiffs withdrew their remaining claim. The plaintiffs claim that the court improperly concluded that their claims were barred by collateral estoppel. We disagree and affirm the judgment of the trial court.

The relevant background facts are set forth in *Terracino* v. *Fairway Asset Management, Inc.*, 75 Conn. App. 63, 815 A.2d 157, cert. denied, 263 Conn. 920, 822 A.2d 245 (2003), as follows. "On July 19, 1991, [Mutual Communications Associates, Inc. (Mutual)] entered into a loan agreement with Brookfield Bank (Brookfield) to borrow $270,000. Mutual, through two of its corporate officers, [Richard T.] DeMarsico and Terracino, signed a promissory note for the loan amount. Mutual secured the debt by a mortgage on one of its properties. DeMarsico, Terracino and [Robert] Rossman, another corporate officer, signed personal guarantees as well. Terracino and [Robert] Rossman signed an additional guarantee as principals and officers of Guardian, an alarm company in which they were the only shareholders.

"On May 8, 1992, the Federal Deposit Insurance Corporation (FDIC) took possession of Brookfield's assets, including the promissory note, mortgage and guarantees. At about the same time, Mutual defaulted on the loan. On or about November 30, 1994, the FDIC commenced a foreclosure action against Mutual and the other defendants. A judgment of foreclosure by sale was rendered on December 16, 1996.

"Thereafter, the judgment was opened and a judgment of strict foreclosure was rendered with law days commencing March 25, 1997. Prior to the judgment of strict foreclosure, JLM Services Corporation (JLM)

succeeded the FDIC as plaintiff, and title vested in JLM when Mutual failed to redeem its equity within the set law days. JLM filed a motion for a deficiency judgment on April 1, 1997. . . .

"While JLM's motion was pending, relations between guarantors Terracino and [Robert] Rossman deteriorated, as the two became embroiled in various business disputes. Also, during that time, Rossman allegedly asked his friend and attorney, [Buzzi], to attempt to purchase the note, guarantees and deficiency claim from JLM on his behalf. JLM eventually sold the note, guarantees and deficiency claim to Andrew J. Buzzi, Jr., Trustee for $30,000. Buzzi, in turn, assigned the note, guarantees and deficiency claim to Consolidated Asset Management, LLC (Consolidated), a limited liability company that he had formed with [Robert] Rossman's wife, Catherine Rossman. Thereafter, Consolidated assigned the note, guarantees and deficiency claim to Fairway Asset Management, Inc. (Fairway), [which became] the substituted plaintiff and judgment creditor. . . .

"[Terracino and Guardian] filed three special defenses, a cross complaint and a counterclaim in response to the motion for a deficiency judgment. The special defenses, as amended, alleged facts that occurred subsequent to the judgment of strict foreclosure. The defendants claimed that [Robert] Rossman breached the fiduciary duty that he owed them because of his role in assigning the note to Consolidated . . . . The counterclaim and cross complaint . . . requested a judgment that Fairway and its predecessors could enforce the note only to claim a proportionate contribution toward funds actually paid on behalf of [Robert] Rossman for the note, or a judgment declaring the note null and void. . . . At trial, Buzzi testified that he did not purchase the note on behalf of [Robert] Rossman.

He testified, instead, that he had purchased the note on behalf of Consolidated.

"The court [*DiPentima, J.*] granted the motion for a deficiency judgment. It rejected the third special defense and concluded that there was insufficient evidence to find that either Buzzi or Catherine Rossman acted as [Robert] Rossman's agent [in purchasing the note from JLM], and, therefore, there was no need to address the defendants' other claims premised on a theory of agency. The court also concluded that the defendants had not met their burden of proof on the counterclaim and cross claim. . . . On or about January 28, 2000, the court rendered judgment for the substitute plaintiff, Fairway, in the amount of $324,631.08, plus attorney's fees. Thereafter, Terracino and Guardian appealed to this court from that judgment. This court, with Chief Judge William J. Lavery dissenting, affirmed the judgment of the trial court. . . .

"While the appeal in *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, [66 Conn. App. 397, 784 A.2d 970 (2001), appeal dismissed, 262 Conn. 358, 814 A.2d 377 (2003)], was pending, the plaintiffs, Terracino and Guardian, filed . . . [a] petition for a new trial on the ground that they had discovered new evidence that likely would have produced a different result had it been presented to the court during the trial. That new evidence consisted of three pieces of correspondence, which, some four months after judgment had entered in the original action, counsel for [Terracino and Guardian] received from the law firm that had represented JLM in conjunction with its sale of the note, guarantees and deficiency claim to Buzzi. In their petition, [Terracino and Guardian] claimed that the new evidence demonstrated that JLM had accepted [Robert] Rossman's offer to purchase the note and, therefore, the defenses that [Terracino and Guardian] raised in the original trial were applicable. They also

claimed that Buzzi, [Robert] Rossman and Rossman's wife, Catherine Rossman, prevented them from discovering that correspondence before or during the trial, and that the correspondence demonstrated that Buzzi and the Rossmans testified falsely at trial that Buzzi had not purchased the note, guarantees and deficiency claim from JLM on behalf of [Robert] Rossman. Finally, [Terracino and Guardian] claimed that the testimony of Buzzi and the Rossmans was intended to mislead the court and to prevent [Terracino and Guardian] from fairly presenting their defenses to Fairway's claims.

"In a memorandum of decision filed March 8, 2001, the court [*DiPentima, J.*] denied [Terracino's and Guardian's] petition for a new trial. It concluded that although the evidence presented by [Terracino and Guardian] had, in fact, been newly discovered and would be material to the issue of whether Buzzi had purchased the note on behalf of [Robert] Rossman, the plaintiffs failed to demonstrate that they had exercised due diligence in their efforts to discover that evidence prior to trial." (Citations omitted; internal quotation marks omitted.) *Terracino* v. *Fairway Asset Management, Inc.*, supra, 75 Conn. App. 65–68.

We turn now to the present case. On January 23, 2006, the plaintiffs filed a second revised complaint, which alleged "civil fraud" (count one), "civil conspiracy to commit fraud" (count two) and indemnification (count three) against the defendants. Only Terracino also alleged a claim for emotional distress (count four). On June 20, 2007, Robert Rossman and Catherine Rossman filed an answer and asserted three special defenses, including, inter alia, collateral estoppel. On that same date, Buzzi and the Rossmans filed motions for summary judgment as to all claims against them.

The court, *Cremins, J.*, granted the motions for summary judgment as to counts one, two and four of the

complaint as to all defendants. It granted Buzzi's motion as to count three and the Rossmans' motion as to count three but only as to Catherine Rossman. The plaintiffs subsequently withdrew count three as to Robert Rossman. The plaintiffs then appealed. Additional facts will be set forth as necessary.

Judge Cremins concluded, as a matter of law, that the plaintiffs' claims were barred by principles of collateral estoppel in that a determinative issue had been decided adversely to them in a prior action. The plaintiffs claim that the court's conclusion in this regard was erroneous. We disagree.

We first set forth our standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 318, 984 A.2d 676 (2009).

"Whether the . . . doctrine of collateral estoppel [is applicable] is a question of law for which our review

is plenary. . . . Collateral estoppel, or issue preclusion, means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . [Thus] [i]ssue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . The doctrine of collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . .

"Before collateral estoppel applies . . . there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." (Citations omitted; internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 100 Conn. App. 94, 99, 917 A.2d 555, cert. denied, 282 Conn. 914, 924 A.2d 140 (2007). "Collateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party." *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 303, 596 A.2d 414 (1991).

The determinative question is whether a dispositive issue raised by the plaintiffs in the present case was litigated and determined in an earlier action. Like Judge Cremins, we begin our analysis by turning to the decision of Judge DiPentima in the initial foreclosure action, *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, Superior Court, judicial district of Litchfield, Docket No. CV-95-0067158 (October 20, 1999). In that case, as noted previously, JLM moved for a deficiency judgment against Mutual, DeMarsico, Robert Rossman, Terracino and Guardian. Terracino and Guardian filed special defenses, a counterclaim

and cross claim against Robert Rossman. In the special defenses, Terracino and Guardian alleged that enforcement of the note was inequitable because "[Robert] Rossman breached his fiduciary duty owed to [them] by his role in the assignment of the note to a limited liability company owned by his wife and his attorney."[2] In describing the pleadings, Judge DiPentima noted that "[t]he thrust of the defense here is that when [Robert] Rossman's wife and attorney formed a limited liability corporation to purchase the note and deficiency, they were acting on [Robert] Rossman's behalf. With this premise, they argue that [Robert] Rossman's actions constitute a breach of fiduciary duty owed to [Terracino and Guardian] that is now attributable to the present plaintiff, who is not a holder in due course." Id. Terracino and Guardian's counterclaim and cross complaint were based on the same facts alleged in the special defenses, and they requested "a judgment that [the FDIC] and its predecessors may not enforce the note except to claim equitable proportionate contribution toward funds actually paid on behalf of [Robert] Rossman for the note or a judgment declaring the note null and void."

The court found that "[Robert] Rossman never owned the note. There was no evidence of an agreement with [Fairway][3] not to pursue judgment against [Robert] Rossman." In granting the motion for a deficiency judgment, the court found that Terracino and Guardian had not met their burden of proof on their counterclaim and cross claim. The court determined that there was not sufficient evidence to find that either Buzzi or Catherine Rossman were acting as agents for Robert Rossman and concluded that neither Robert Rossman or

---

[2] During the pendency of the deficiency action, a limited liability company owned by Buzzi or Catherine Rossman, had in some capacity purchased the note.

[3] Fairway had been assigned the note by the limited liability company formed by Buzzi and Catherine Rossman.

any agents of Robert Rossman had purchased the note, guarantee and debt. The court stated that because it "concludes that neither [Robert] Rossman nor his agents purchased the note, guarantee and debt, it need not address [Terracino and Guardian's] arguments premised on the opposite conclusion." Id. Terracino and Guardian appealed from the deficiency judgment rendered against them, and this court affirmed the decision of the trial court. *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, supra, 66 Conn. App. 397.

The issues of whether Robert Rossman owned the note and whether Buzzi or Catherine Rossman were acting as Robert Rossman's agent were actually litigated and necessarily determined in the action on the motion for a deficiency judgment. The plaintiffs contend, however, that this determination was necessary only to determine the chain of title to the note and, thus, was not essential to the judgment. We do not agree. After finding that Terracino and Guardian did not prove that Robert Rossman or his agents purchased the note, the court concluded that it did not need to address the arguments of Terracino and Guardian that were premised on the opposite conclusion. The court found against Terracino and Guardian on their special defenses and cross claim precisely because they did not prove that Robert Rossman or his agents purchased the note. The absence of agency was necessary to the court's decision.

The issue of whether Robert Rossman owned the note, by virtue of Buzzi's or Catherine Rossman's acting as Robert Rossman's agent, is necessary for recovery on the complaint in issue. All four counts of the plaintiffs' complaint are based on the following allegations. Robert Rossman and Terracino, recognizing that they were obligated to JLM as guarantors of the note, agreed to negotiate together with JLM to purchase it for a

discounted amount and then to retire it. While negotiations with JLM were ongoing, relations between Robert Rossman and Terracino began to deteriorate. Robert Rossman thought that if he could acquire the promissory note from JLM by himself, instead of jointly with Terracino, he could enforce it against Terracino and Guardian, thereby securing a financial windfall and possibly forcing Guardian out of business or into bankruptcy. According to Buzzi's advice, the note would become unenforceable against Terracino and Guardian if Robert Rossman took ownership of it because Robert Rossman was a coguarantor of the note.[4] Therefore, Buzzi and the Rossmans devised a plan whereby Buzzi would take assignment of the note as trustee for Robert Rossman and would then transfer the note to Consolidated, a limited liability company created and owned by Buzzi and Catherine Rossman. The plan was executed, and the defendants pursued the action for a deficiency judgment previously filed by JLM against Terracino and Guardian. During that proceeding, the Rossmans and Buzzi withheld evidence regarding the note transaction, which evidence was later the subject of the plaintiff's petition for a new trial, in order to mislead Terracino's attorney, Terracino and Guardian into believing that Robert Rossman never owned the note and that, as a result, the note was still enforceable against Terracino and Guardian. The plaintiffs claim that as a result of the defendants' actions, they suffered harm. In the count alleging "civil fraud," the plaintiffs further allege that they suffered harm as a result of the defendants' fraudulent actions, namely, withholding critical statements or testimony regarding the note transaction, which, if disclosed, would have changed

---

[4] But see *Terracino* v. *Gordon & Hiller*, 121 Conn. App. 795, 1 A.3d 97 (2010). In a case arising from the same factual background, this court has held that, by virtue of the language of the guarantee, the note is fully enforceable against Terracino in any event.

the result. The count alleging "civil conspiracy to commit fraud,"[5] is premised on the plaintiffs' allegations that Buzzi and the Rossmans devised a plan whereby they agreed not to disclose the true facts and circumstances of the transaction, namely, that Robert Rossman had acquired the note, so that they could enforce the note against the plaintiffs or influence the entry of a judgment against the plaintiffs.[6] In the common-law indemnification claim, the plaintiffs further allege that the court, misled by inaccurate testimony, improperly concluded that Robert Rossman never owned the note. In his emotional distress claim, Terracino further alleges that as a result of the defendants' actions, he suffered emotional distress.

The essence of the complaint is that Robert Rossman devised a plan with Catherine Rossman and Buzzi whereby Robert Rossman would, in effect, acquire the note, and all three would fraudulently keep this fact from the plaintiffs during litigation.[7] The complaint is premised on the assertion that either Robert Rossman or his agents purchased the note from JLM. All agree that Robert Rossman never owned the note in an individual capacity; if no one acted as his agent, the summary judgment was rendered properly because the

---

[5] We note that "there is no independent claim of civil conspiracy. Rather, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." (Citations omitted; internal quotation marks omitted.) *Harp* v. *King*, 266 Conn. 747, 779 n.37, 835 A.2d 953 (2003).

[6] This count depends on the underlying claim that Buzzi was Robert Rossman's agent. The count essentially alleges that the defendants conspired to conceal the truth concerning the agency relationship.

[7] We further note that there is no civil remedy for perjury. See *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264, 597 A.2d 807 (1991) ("[w]hile no civil remedies can guard against lies, the oath and the fear of being charged with perjury are adequate to warrant an absolute privilege for a witness' statements"); see also *Petyan* v. *Ellis*, 200 Conn. 243, 245, 510 A.2d 1337 (1986) ("[i]t has long been established that there is an absolute privilege for statements made in judicial proceedings").

dispositive issue of Robert Rossman's ownership was necessarily decided in the previous case.[8]

The plaintiffs claim additionally that in granting in part the defendants' motions for summary judgment, Judge Cremins improperly failed to consider the findings of fact made in the court's ruling on the plaintiffs' petition for a new trial in the foreclosure action. We disagree.

In the memorandum of decision on the plaintiffs' petition for a new trial, Judge DiPentima stated: "As to the element of materiality, the court determines that this newly discovered evidence would affect some of the court's findings in the original action, specifically that Buzzi was unsuccessful in negotiating the purchase of the note by Rossman. In fact, exhibit one shows that JLM accepted the last offer by Buzzi on behalf of Rossman for $30,000." The plaintiffs argue that these findings are significant in that they demonstrate that the court recognized that its initial finding regarding Buzzi's and Catherine Rossman's involvement in the note acquisition, including the finding that they were not agents of Robert Rossman, was erroneous. The plaintiffs contend that in ruling on the defendants' motions for summary judgment, Judge Cremins properly should have considered these subsequent findings because they directly concern the issue of agency and more accurately reflect the available evidence. If the court had considered these findings, the plaintiffs argue, it would have concluded either that issues of material fact remain or that the issue was resolved in favor of the plaintiffs because it was clear from the newly discovered evidence that Robert Rossman in effect purchased the note with the assistance of Catherine Rossman and Buzzi.

---

[8] The court denied the motion for summary judgment as to count three as to Robert Rossman, and the propriety of the denial is not before us.

Judge DiPentima's decision on the petition for a new trial does not affect the applicability of collateral estoppel in the present case. While the court, in ruling on the plaintiffs' petition for a new trial, commented on the effect that the newly discovered evidence might have had on its findings in the original action, it denied the plaintiffs' petition. The court's decision in the foreclosure action is a final judgment, and the court's denial of the petition for a new trial does not affect the finality of that judgment. To the extent that the plaintiffs are now claiming that the court's decision in the foreclosure action is erroneous, that claim does not affect the applicability of the doctrine of collateral estoppel in this case. "Unless, and until, it is corrected, modified, reversed, annulled, vacated, or set aside on appeal or in some other timely and appropriate proceeding, a final judgment on the merits which has been rendered by a court having jurisdiction of the parties and the subject matter, and which is not void, is conclusive as to matters put in issue and actually determined in the suit, when they come into controversy again in subsequent litigation between the same parties or their privies, even though it is irregular or erroneous. Under the [doctrine] of . . . collateral estoppel, a later court cannot alter the results of a prior final judgment even if that judgment is wrong . . . ." 50 C.J.S., Judgments § 1047, p. 405 (2009). The court's denial of the petition does not affect the fact that in the foreclosure action, the issues of agency and note ownership were actually litigated and necessarily determined. As such, the court's subsequent denial of the petition for a new trial leaves the prior decision intact.

In the petition for a new trial, the plaintiffs alleged that three pieces of newly discovered evidence, namely, correspondence between Buzzi and the attorney for JLM dated July 2 and 3, 1997, would affect the court's

finding in the original action that Buzzi was unsuccessful in negotiating the purchase of the note by Robert Rossman. Following the denial of the petition, the plaintiffs alleged in their complaint in the present action that after the deficiency hearing, but during the pendency of the appeal, the newly discovered critical evidence, namely, the letters dated July 2 and 3, 1997, which demonstrate that Robert Rossman personally acquired the note, thus rendering the note unenforceable against the plaintiffs. The plaintiffs, in their complaint in the present action, are attempting to relitigate the issue of whether Robert Rossman had an ownership interest in the note, which issue already was litigated in the foreclosure action. "Under the issue preclusion doctrine, a party may not be permitted to introduce new or different evidence to relitigate a factual issue which was presented and determined in a former action. Litigation of an issue necessarily encompasses all arguments and evidence that could be presented to resolve the issue, and the mere discovery of new evidence does not create a new issue, in the issue preclusion context. . . . Some degree of diligence must be shown to avoid the application of issue preclusion on a 'new evidence' theory . . . ."[9] 50 C.J.S., supra, § 1061, p. 424. The "new evidence" that formed the basis for the plaintiffs' petition for a new trial, and which forms the basis of the plaintiffs' allegation in their present complaint that Robert Rossman owned the note does not create a new issue in the collateral estoppel context. In denying the plaintiffs' petition for a new trial, Judge DiPentima reasoned that the plaintiffs failed to demonstrate that they had exercised due diligence in their efforts to discover that evidence prior to trial. The plaintiffs are unable to avoid the application of collateral estoppel. The plaintiffs had a full and fair opportunity to litigate the issues

[9] The issue of diligence was addressed by Judge DiPentima in denying the petition for a new trial as well.

of whether Robert Rossman owned the note and whether Buzzi or Catherine Rossman were acting as Robert Rossman's agent.[10] Nothing in the record before us, or in the briefs and arguments of counsel, provides any justification for departing from the doctrine of collateral estoppel to allow the plaintiffs an opportunity to relitigate these issues. It was not improper for the court, in ruling on the defendants' motions for summary judgment, to decline to consider any finding in the court's memorandum of decision on the petition for a new trial. "[T]he judicial [doctrine] of . . . collateral estoppel [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Internal quotation marks omitted.) *Honan* v. *Dimyan*, 63 Conn. App. 702, 706–707, 778 A.2d 989, cert. denied, 258 Conn. 942, 786 A.2d 430 (2001). The court properly granted Buzzi's motion for summary judgment and properly granted, in part, the Rossmans' motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The plaintiffs seem to argue, however, that collateral estoppel does not apply because the court's decision in the foreclosure action did not encompass issues raised by the plaintiffs in the present action, such as whether Buzzi and the Rossmans conspired to acquire the note, what they did with the note after they acquired it, and whether they testified falsely and misled the plaintiffs. Collateral estoppel requires that there be an identity of issues between prior and subsequent proceedings. *Williams* v. *Commissioner of Correction*, supra, 100 Conn. App. 99. Even though the only issues that are identical in both actions are agency and ownership of the note, collateral estoppel applies because the plaintiffs cannot prevail on the causes of action alleged if the allegations as to these issues are not proved. Once these issues are taken not to be proved, then the complaint, which is dependent on these allegations, must fail. It is of no moment that the court in the foreclosure action did not decide each and every allegation in the complaint.