**Richard E. POULOS, Trustee in Bankruptcy**

**v.**

**Carl MENDELSON, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1985.

Decided May 1, 1985.

Franklin M. Walker, Jr. (orally), Damariscotta, for plaintiff.

Brann & Isaacson, Alfred C. Frawley (orally), Robert B. Gregory, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

In the Superior Court (Waldo County), plaintiff Richard E. Poulos, trustee in bankruptcy of the bankrupt estates of Maplewood Poultry Company and related companies ("Maplewood"),[1] obtained on July 23, 1984, a summary judgment in the amount of $644,758 plus interest and costs against six named defendants[2] on their guaranties of a Maplewood obligation. Defendants now appeal, alleging errors of law in the decision of the Superior Court. We find no merit in their arguments, and we affirm the judgment below.

This state court action is ancillary to proceedings in the Federal Bankruptcy Court involving the bankrupt Maplewood. On August 24, 1978, Maplewood obtained a loan of $1,000,000 from Merrill Trust Company (Merrill), secured by the personal guaranties of defendants, who owned the Maplewood companies, and the further guaranty of the Economic Development Administration (EDA). Within a year, Maplewood had defaulted on its promissory note to Merrill. In August of 1979, Maplewood instituted a Chapter XI proceeding. Poulos, plaintiff in this case, became receiver for Maplewood in January 1980; when Maplewood was adjudged bankrupt in January, 1982, he was appointed trustee in bankruptcy. At some point in time, EDA paid off Merrill and became the owner of the Maplewood note.

---

1. The other companies are Clement Chicks, Inc., Pierce Realty Company, and Northern New England Feed Company.

2. The defendants are Carl Mendelson, Doris Mendelson, James Mendelson, Sara Mendelson, Dorothy Higer, and Maine Coast Realty Company.

Maplewood's major creditors each claimed numerous security interests, of varying priorities, in various of its assets. The validity and priority of certain of those security interests were contested in the Bankruptcy Court. In December 1980, however, Poulos and Maplewood's three major secured creditors, EDA, Farmers Production Credit Association of Southern Maine, and Federal Land Bank of Springfield, entered into settlement agreements resolving all of the parties' competing claims. Those settlement agreements provided a comprehensive plan by which the litigation over the security interests was avoided, and the secured creditors accepted a fixing of the amount of their claims. Poulos was to sell Maplewood's assets immediately and to apply the proceeds in complete satisfaction of the claims of Federal Land Bank and Farmers Production Credit Association, and in partial satisfaction of those of EDA. The settlements authorized and directed Poulos to collect certain funds from Underwriters at Lloyds, and to obtain payment from defendants on their guaranty contracts. The moneys so obtained were, under the settlement agreements, to be applied in satisfaction of the remainder of EDA's claim against the bankrupt estate, with any excess to be distributed to the general creditors. The settlement agreements thus simplified and expedited the administration of a highly complex bankrupt estate. By a thorough opinion and order, the bankruptcy judge on January 30, 1981, approved the agreements and ordered Poulos to implement them. That order was affirmed over defendants' objections by the United States District Court for the District of Maine, and in turn by the First Circuit Court of Appeals in *Mendelson v. Maplewood Poultry Co.*, 684 F.2d 180 (1st Cir.1982).

The December 1, 1980, settlement agreement with EDA, approved by the Bankruptcy Court, explicitly required Poulos to collect on the guaranties of defendant guarantors, in these terms:

7. The Receiver shall diligently and expeditiously pursue:

. . . . .

b. collection of the total amount of the EDA debt including accrued interest, costs and counsel fees from the guarantors of that debt.

On August 18, 1982, plaintiff Poulos commenced the present suit against defendants on the guaranty contracts executed by them as guarantors of the Maplewood note to Merrill, which by then was owned by EDA. The complaint quoted the language of paragraph 7(b) of the December 1, 1980, settlement agreement as the basis for a demand for entry of judgment against defendants in the full amount of the EDA debt, then allegedly in excess of $1.3 million. Defendants moved thereafter to dismiss the complaint on the ground that Poulos was not the real party in interest in the suit. By way of response, Poulos amended his complaint to assert the following:

In addition to the settlement agreement between the Receiver and the EDA dated December 1, 1980, which constitutes a full assignment of all rights from the EDA to the Receiver, the EDA has by separate instrument entitled "Assignment of Rights" and dated December 2, 1982, specifically assigned all its right, title and interest existing vis-a-vis the Defendants herein to Richard E. Poulos as he is Trustee in Bankruptcy of Maplewood.

The December, 1982, Assignment of Rights referred to in the amended complaint provided that EDA "pursuant to the provisions of the Stipulation and Settlement Agreement ... hereby assigns [to Poulos] ... all of its rights, title and interest which it has against [defendants], both separately and collectively, including without limitation those rights, title and interest arising under [the promissory note, the loan agreement and the various guaranty contracts]." Poulos thereafter filed a motion for summary judgment under M.R.Civ.P. 56. The Superior Court granted that motion, and defendants brought the instant appeal.

The guarantors argue that either Poulos is not the real party in interest with respect to the note,[3] or the note has been assigned to him as trustee in bankruptcy for Maplewood, in which event it has been extinguished under the doctrine of merger laid down in the Uniform Commercial Code, 11 M.R.S.A. § 3–601(3) (1964). An examination of the controlling documents shows that there is no merit in either aspect of defendants' argument.

In the first place, Poulos needs no assignment *of the note* to have standing to sue defendants on their guaranty contracts. It is not Maplewood's obligation on its note that Poulos seeks to enforce; rather, Poulos sues upon defendants' completely separate obligations under their unconditional guaranty contracts. That Poulos is entitled to sue on those guaranty contracts is made perfectly clear by his receipt of an express assignment of all of EDA's rights thereunder. By virtue of the December 1982 assignment, which is but an implementation of the December 1980 settlement agreements authorizing Poulos to collect on the guaranty contracts, Poulos became the real party in interest on those contracts, to the exclusion of EDA. Poulos was then required by M.R.Civ.P. 17(a) to be the named plaintiff in the present suit on the guaranties. *See generally* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 17.1 (2d ed. 1970); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1545 (1971).

The purpose of the Rule 17(a) provision that "[e]very action shall be prosecuted in the name of the real party in interest" is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata." Advisory Committee Note to 1966 Amendment to F.R.Civ.P. 17(a), reprinted in Proposed Rules of Civil Procedure, 39 F.R.D. 69, 85

(1966); *see Hefley v. Jones,* 687 F.2d 1383, 1388 (10th Cir.1982). EDA has assigned away its only claim against defendants as guarantors. Defendants face no danger of double liability on their guaranties. *See id.*

In sum, Poulos was made the real party in interest with respect to the subject matter of this suit by the assignment to him of EDA's chose in action against the defendant-guarantors. His lack of ownership of the note is irrelevant to his standing to sue upon the guaranty contracts.

As for defendants' merger argument, we cannot find from the record before us that any assignment *of the note* was ever made to Poulos. Contrary to defendants' argument, we read the assignment instrument dated December 2, 1982, in the context of the other documents in the record, to assign precisely and only what it purports to assign; namely, all "rights, title and interest *which [EDA] has against [defendants]*" (emphasis added). The only interest fitting that description is EDA's right to collect from defendants as guarantors of the Maplewood note. Assignment of that chose in action comprehends EDA's rights under the guaranty contracts, but does not extend to an assignment of the note itself, which evidences a completely different obligation of a different obligor; namely, Maplewood. The further language in the assignment, that it was to include "without limitation *those* rights" (emphasis added) arising under various named instruments, was limited by the modifier "those" to refer only to those previously identified rights that EDA had against defendants as guarantors, not to the full scope of EDA's rights against Maplewood on its note. The intent of the parties so to limit the assignment of rights is evident in the contemporaneous language added to Poulos's complaint to allege his receipt of that assignment: "EDA has ... assigned *all its right, title and*

---

**3.** *See* M.R.Civ.P. 17(a) ("Every action shall be prosecuted in the name of the real party in

interest.").

*interest existing vis-a-vis the Defendants herein* to ... Poulos." (Emphasis added) Since defendants have not shown that the Maplewood note itself was ever assigned to Poulos, we do not even reach their argument that the doctrine of merger applied to the note provides them a defense against being sued on their guaranty contracts.

Accordingly, the entry is:

Judgment affirmed.

All concurring.