JEROME G. TERRACINO ET AL. *v.* GORDON AND
HILLER ET AL.
(AC 29837)

Flynn, C. J., and Lavine and Peters, Js.*

* The listing of judges reflects their seniority status on this court as of
the date of oral argument.

Argued October 27, 2009—officially released June 22, 2010

*Michael S. Lynch,* for the appellants (plaintiffs).

*Robert W. Cassot,* with whom, on the brief, were *Cristin E. Sheehan* and *Kristine R. Jones,* for the appellees (defendants).

*Opinion*

PETERS, J. This case lies at the intersection of two principles of the law of suretyship. One principle permits a guarantor expressly to waive common-law defenses to his liability for the debt of another. *Connecticut National Bank* v. *Douglas,* 221 Conn. 530, 544–45, 606 A.2d 684 (1992). The other principle presumes that, between coguarantors for the same debt, each coguarantor is liable only for a contributive share of the total outstanding debt. Restatement (Third), Suretyship and Guaranty §§ 55 through 57 (1996); *Collins* v. *Throckmorton,* 425 A.2d 146, 151–52 (Del. 1980); *Albrecht* v. *Walter,* 572 N.W.2d 809, 812–13 (N.D. 1997). The plaintiffs are guarantors who, in a prior action, have been held liable for the total amount of the debt that they underwrote. Invoking the second principle, they have brought a malpractice action against the defendants, their former attorneys, for failing to discover, in a timely

fashion, that a coguarantor was an intermediate transferee of the guaranteed debt. Relying on the broad language of the guarantees executed by the plaintiffs, the trial court granted the defendants' motion for summary judgment. The plaintiffs have appealed. We affirm the judgment of the trial court.

In a two count complaint filed February 22, 2006, the plaintiffs, Jerome G. Terracino and Guardian Systems, Inc. (Guardian), sued their former attorneys, the defendants, Gordon and Hiller and A. Reynolds Gordon, for monetary damages for legal malpractice. They alleged that the defendants had failed to exercise due diligence in discovering evidence that would have altered the outcome in litigation that resulted in a judgment in favor of Fairway Asset Management, Inc. (Fairway), in the amount of $324,631.08, postjudgment interest now exceeding $100,000 and attorney's fees of $7500.[1] In addition to denying many of the plaintiffs' factual allegations, the defendants moved for summary judgment on the ground that the newly discovered evidence would not have altered the outcome of the underlying action because of the guarantees signed by the plaintiffs. The court, *Shaban, J.*, granted the motion, and the plaintiffs have appealed.

Largely relying on the facts of record in related prior court opinions, the trial court made the following findings. "In July of 1991, Mutual Communications Associates (Mutual) borrowed $270,000 from Brookfield Bank pursuant to a mortgage, promissory note and commercial agreement of guarantee. Jerome Terracino, Robert Rossman and Richard DeMarsico, the corporate officers of Mutual, all signed as guarantors on the note.

---

[1] The first count contained the substantive allegations against the defendants. The second count alleged that Gordon and Hiller was vicariously liable for the negligence of A. Reynolds Gordon, an attorney in the firm.

Terracino and Rossman also signed an additional guarantee as the principals and officers of Guardian Systems, Inc., an alarm company.

"On May 8, 1992, the Federal Deposit Insurance Corporation (FDIC) took possession of the assets of Brookfield Bank, including the promissory note, mortgage and [guarantees]." When Mutual defaulted on the loan, "the FDIC . . . foreclosed against Mutual, Guardian, Terracino, Rossman and DeMarsico, and a judgment of strict foreclosure entered in February of 1997.[2] Thereafter, the FDIC sold the note to JLM Corporation [JLM], [which] filed a motion for deficiency judgment against the guarantors."

The note, the guarantees and the deficiency claim were then assigned to various successive takers. JLM assigned them to Andrew Buzzi, Jr., as trustee,[3] who then assigned them to Consolidated Asset Management, LLC (Consolidated), which, in October, 1998, assigned them to Fairway. Following this assignment, Fairway was substituted as a party to JLM's motion for deficiency judgment.

Defending against Fairway's action for a deficiency judgment, the present plaintiffs argued that, because they were coguarantors with Rossman, their liability was limited to that of a proportionate contribution toward funds actually paid on behalf of Rossman for the note. The court, *DiPentima, J.*, rejected this argument and rendered judgment in favor of Fairway. This court affirmed the judgment in *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, 66

---

[2] *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, Superior Court, judicial district of Litchfield, Docket No. CV-95-0067158 (October 20, 1999) (*DiPentima, J.*), aff'd, 66 Conn. App. 397, 408, 784 A.2d 970 (2001), appeal dismissed, 262 Conn. 358, 814 A.2d 377 (2003).

[3] Buzzi represented Rossman as his attorney.

Conn. App. 397, 400, 784 A.2d 970 (2001), appeal dismissed, 262 Conn. 358, 814 A.2d 377 (2003) (certification improvidently granted).

Thereafter, the present plaintiffs filed a motion for a new trial in which they alleged that newly discovered evidence demonstrated that Rossman in fact had acquired the promissory note from JLM, and that this evidence demonstrated that their liability was limited to that of coguarantors. Judge DiPentima denied this motion as well, concluding that even if such evidence had been presented earlier, it would not have affected the outcome of the case. This court again affirmed the judgment. *Terracino* v. *Fairway Asset Management, Inc.*, 75 Conn. App. 63, 815 A.2d 157, cert. denied, 263 Conn. 920, 822 A.2d 245 (2003).[4]

Relying on the defendants' presentation of uncontroverted documentary evidence containing the plaintiffs' guarantees, Judge Shaban granted the defendants' motion for summary judgment in the malpractice action. The court based its judgment on the plain language of the guarantee agreements, which provide that "[t]he liability of the [g]uarantor hereunder is direct, absolute and unconditional without regard to the liability of any other person" and that "[the] obligations and liabilities hereunder shall in no way be released . . . by reason of the release of, or unenforceability of any agreement or undertaking by any other guarantor or other party liable . . . ."

The plaintiffs' appeal raises two issues. They maintain that (1) their guarantees were no longer enforceable once their coguarantor, Rossman, acquired the promissory note and (2) unresolved issues of material fact

---

[4] The opinion of the Appellate Court does not address the guarantee issue. The plaintiffs have not proffered any explanation for why that issue was not pursued at that time.

made it inappropriate to grant the defendants' motion for summary judgment. We are not persuaded.

"We apply a well settled standard of review to the [plaintiffs'] claim that the court improperly rendered summary judgment. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Keller* v. *Beckenstein*, 117 Conn. App. 550, 556–58, 979 A.2d 1055, cert. denied, 294 Conn. 913, 983 A.2d 274 (2009).

I

## THE ENFORCEABILITY OF THE PLAINTIFFS' GUARANTEES

The plaintiffs' principal claim on appeal is that the court improperly relied on the guarantees that they had executed in support of Mutual's indebtedness to Brookfield Bank and its assignees. In their view, once Rossman acquired the note,[5] the only enforcement rights that Rossman or subsequent assignees were entitled to exercise against the plaintiffs were pro rata rights

[5] The defendants question the validity of Judge Shaban's finding that Buzzi was acting for Rossman when he acquired the note at issue. In the absence of a cross appeal by the defendants, we decline to address this issue.

of contribution for the amount paid by Rossman to acquire the note. In the absence of disagreement about the text of the relevant guarantees, the plaintiffs are entitled to plenary review of this claim. See *Trugreen Landcare, LLC* v. *Elm City Development & Construction Services, LLC*, 101 Conn. App. 11, 13–14, 919 A.2d 1077 (2007).

The undisputed record at trial contained two guarantees signed by Terracino. One was an agreement that was part of the loan note executed by Mutual, and the other was a commercial agreement of guarantee.

In conjunction with the loan note, Terracino agreed: "Even if I'm signing this Note with another person or persons, I am obligated to pay the entire amount owing under it. You may require that I pay this amount without asking any other person to pay. You don't have to notify me that the loan made under this Note hasn't been paid by any other person. You and any person signing this Note can repeatedly agree to renew or extend it for any length of time, revise its terms, release any of the security or release anyone from liability under this Note without notifying me or releasing me from my responsibility on this Note. My obligation to pay is absolute and not conditioned on anything."

In the guarantee agreement, which Terracino executed for himself and as a corporate officer of Guardian, he agreed that (1) "this [g]uaranty is irrevocable . . . until the indebtedness has been fully and finally paid to the [b]ank," (2) "[t]he [g]uarantor expressly agrees that its obligations and liabilities hereunder shall in no way be released, lessened, or impaired by reason of the release of, or unenforceability of any agreement or undertaking by any other guarantor or other party liable, whether primarily or secondarily, for the repayment of all or any part of the indebtedness," and (3) "[i]f there is more than one [g]uarantor of all or any portion

of the [i]ndebtedness, their liability shall be joint and several." Rossman signed an identical guarantee agreement.

It is useful to start our analysis of the plaintiffs' claims on appeal by identifying the claims the plaintiffs do *not* make. The plaintiffs do not take issue with the breadth of the text of these guarantees. They do not argue that they subscribed to these guarantees without having had the opportunity fully to comprehend their contents. They do not claim that the guarantees are in any respect patently or latently ambiguous. They do not refer to anything in the guarantees that manifests any intention on the part of the subscribers thereto that the conduct of any one of them, short of payment, would discharge the others, in whole or in part.[6]

Instead, the plaintiffs argue here, as they did at trial, that the obligations memorialized therein substantially were diminished, as a matter of law, by Rossman's acquisition of the promissory note, regardless of whether subsequent takers of the note and the guarantees had notice that Buzzi, as trustee, was acting on Rossman's behalf. Their argument that, with proper legal representation, Fairway's recovery should have been limited to that of contribution between coguarantors relies on a number of out-of-state cases that explain and apply the equitable principles that govern contribution between coguarantors. See, e.g., *Collins* v. *Throckmorton*, supra, 425 A.2d 151–52; *Albrecht* v. *Walter*,

---

[6] We recognize that the plaintiffs claim, in their appellate brief, that they were improperly precluded from presenting to the court, as an issue of fact, questions relating to the interpretation of the guarantees to which they had subscribed. This claim is not reviewable because the plaintiffs have not satisfied their burden of identifying where in the trial record they raised this issue. See *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 250, 618 A.2d 506 (1992); *Tuccio Development, Inc.* v. *Neumann*, 114 Conn. App. 123, 129, 968 A.2d 956 (2009). They filed no counteraffidavits at trial to support their opposition to the defendants' motion for summary judgment. They did not raise it in their motion for reargument.

supra, 572 N.W.2d 812–13; see also Restatement (Third), supra, § 55.[7]

The plaintiffs' argument requires us to assume that Fairway has no greater rights to enforce the underlying obligation to the FDIC than did Rossman. Although Fairway was not a holder in due course,[8] the court found that it had been substituted as a party to JLM's motion for a deficiency judgment. As such, it was the assignee of the original obligee, Brookfield Bank.

As an obligee, Fairway's rights were not limited to those of a coguarantor. The first comment to Restatement (Third), supra, § 55, states that with respect to the *obligee*, each coguarantor is liable "in accordance with the terms of its secondary obligation." Id., comment (a); see *Green Leaves Restaurant, Inc.* v. *617 H Street Associates*, 974 A.2d 222, 234–35 (D.C. App. 2009). The law of suretyship therefore does not preclude reliance on the principle enunciated in *Connecticut National Bank* v. *Douglas*, supra, 221 Conn. 544–45, that a guarantor expressly may waive his rights to the protection that the common law or statutory law presumptively affords him.

Even if we were to assume, however, that Rossman's intermediary ownership of the rights at issue affected Fairway's status as obligee, the plaintiffs still cannot prevail. The rights that the law of suretyship confers

---

[7] Restatement (Third), supra, § 55, p. 236, provides, "(1) As between [coguarantors] for the same underlying obligation, each [coguarantor] is a principal obligor to the extent of its contributive share . . . and a secondary obligor as to the remainder of its duty pursuant to its secondary obligation.

"(2) To the extent that, as between themselves, one [coguarantor] is a secondary obligor and the other is a principal obligor, the former has rights of contribution against the latter. The rights of contribution are the same as the rights of a secondary obligor against a principal obligor as set forth in §§ 21-31." (Citation omitted.)

[8] Under General Statutes § 42a-3-302 (a) (2) (iii), a holder in due course must take an instrument "without notice that the instrument . . . has been dishonored . . . ."

on coguarantors are not immutable. Section 57 (1) of the Restatement (Third), p. 243, expressly recognizes that contributive rights are "[s]ubject . . . to any express or implied agreement between or among the [coguarantors]." None of the cases on which the plaintiffs rely address this issue.

To prevail in their appeal to this court, therefore, the plaintiffs would have to establish that the trial court improperly relied on the provisions of the guarantees that they executed. They have not brought to our attention any effort on their part to raise such a claim at trial. To the contrary, they concede in their reply brief that the language of the guarantees, absent acquisition of the note by a coguarantor, would afford the noteholder full enforcement rights against the plaintiffs.

The fundamental flaw in the plaintiffs' appeal is their failure to recognize that, like other aspects of the law governing guarantees, the consequences of acquisition of a note by a coguarantor are subject to contractual modification. The defendants based their motion for summary judgment on their allegation that the guarantees signed by the plaintiffs "acted as a waiver of the very defenses that the new evidence would have allegedly supported." The court granted the defendants' motion for summary judgment on this basis. Neither in their opposition to the defendants' motion, nor in their motion to reargue the court's decision to grant the defendant's motion did the plaintiffs ever address, in any fashion, the terms of the guarantees to which they had subscribed.

On this state of the record, the plaintiffs have presented no persuasive argument in support of their contention that the court's decision on the merits of the defendants' motion for summary judgment was flawed. On the record before the court, the guarantees executed

by the plaintiffs were fully enforceable according to their own terms.

## II

The plaintiffs' alternate claim on appeal is that the court prematurely granted the defendants' motion for summary judgment because there were unresolved issues of fact. We disagree.

First, the plaintiffs maintain that the court was presented with unresolved questions of fact about a fiduciary relationship between the guarantors in this case. Relying on statements of fact in prior appellate decisions adjudicating some of the rights of the parties, the plaintiffs opine that "the extent of the fiduciary duties owed to each other based on those relationships, could not be decided by summary adjudication . . . ."

We note, at the outset, that the plaintiffs presented no affidavits or other documentary evidence to demonstrate the existence of a genuine issue of *any* material fact. See Practice Book §§ 17-45 and 17-46. "[D]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . [U]nadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Internal quotation marks omitted.) *Martin* v. *Westport,* 108 Conn. App. 710, 721, 950 A.2d 19 (2008). We note further that, in their motion to reargue the court's decision granting the defendants' motion for summary judgment, the plaintiffs briefed only two issues of law. None of the briefed issues alerted the court to the claim they now make on appeal, namely, that summary judgment was premature because of the existence of unresolved disputes of material fact.

Even if we were to overlook these procedural defaults, the plaintiffs have not explained the relevance

of the unresolved factual claims that, in their view, made it premature for the court to grant the defendants' motion for summary judgment. They point to disputes about the defendants' exercise of due diligence in their defense of the plaintiffs in the Fairway litigation and to uncertainty about the precise nature of the relationship between Rossman and Terracino.[9] They have not endeavored to explain, however, how these unresolved issues of fact relate to the court's ruling that the sweeping terms of the guarantees signed by the plaintiffs bar them from a recovery from the defendants.

In sum, we conclude that the court properly exercised its authority to address the merits of the defendants' motion for summary judgment. On the merits, we conclude that the court properly granted the motion in light of the breadth of the guarantees to which the plaintiffs had unconditionally agreed.

The judgment is affirmed.

In this opinion LAVINE, J., concurred.

FLYNN, C. J., dissenting. The appellants have sued their former attorneys, claiming that they were negligent in not timely discovering that a coguarantor on a promissory note had purchased the note, which the appellants had guaranteed, at a discount, and that he or his assigns later enforced the note and guarantee

---

[9] The plaintiffs also rely on a dissenting opinion in *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, supra, 66 Conn. App. 408, that concluded that Rossman had a fiduciary duty to the plaintiffs. The plaintiffs fail to note, however, that, after our Supreme Court granted a petition for certification to appeal in that case to consider whether, "under the applicable equitable principles, the plaintiff was entitled to the full amount of the deficiency judgment in this case"; (internal quotation marks omitted); *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, 262 Conn. 358, 360 n.1, 814 A.2d 377 (2003); the court dismissed the appeal on the ground that certification had been improvidently granted. Id., 360.

against the plaintiffs at face value. Because I believe that the entry of summary judgment against the plaintiffs, Jerome G. Terracino and Guardian Systems, Inc., improperly deprived them of the opportunity to prove that they would have been successful in the underlying case but for the lack of due diligence of the defendants, A. Reynolds Gordon and his law firm, Gordon and Hiller, I respectfully dissent and would reverse the summary judgment.

As a matter of law, once a coguarantor purchases a note and the accompanying guarantees, the indebtedness to the creditor is considered paid, and any right the coguarantor, who was the purchaser of the note, may have to payment from his fellow coguarantor is limited by the doctrine of equitable contribution and bars him from enforcing payment against his coguarantor for the face value of the note when he has purchased it at a discount.

Furthermore, if we were to look only to the note and guarantee agreement, as does the majority, as an alternative ground in this particular case, the guarantee specifically stated, in paragraph 2 (b) that "[t]his [g]uaranty is irrevocable and shall continue in full force and effect *until the [i]ndebtedness has been fully and finally paid to the [b]ank.*" (Emphasis added.) On the basis of the evidence submitted, it appears that Robert Rossman, a coguarantor, settled this debt with the bank, thereby extinguishing the guarantee by its very terms.[1]

---

[1] I recognize that a very recent decision of this court, *Terracino* v. *Buzzi,* 121 Conn. App. 846, 1 A.3d 115 (2010), upholds, as binding, an earlier finding of the trial court that Rossman was not the purchaser of the Fairway note and guarantee. See *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.,* Superior Court, judicial district of Litchfield, Docket No. CV-95-0067158 (October 20, 1999), aff'd, 66 Conn. App. 397, 784 A.2d 970 (2001), appeal dismissed, 262 Conn. 358, 814 A.2d 377 (2003). I conclude that this finding is not binding for purposes of this malpractice action if the finding was due to the alleged malpractice of the defendants in not rooting out the purchase of this note and guarantee at less than par by Rossman, a coguarantor. Furthermore, there is no mutuality of the parties for purposes

Nevertheless, the note later was enforced against the plaintiff coguarantors at its full face value. Accordingly, I do believe that the plaintiffs had a viable claim for malpractice against their former attorneys for failing to exercise due diligence in the underlying case in failing to discover that a coguarantor had purchased the note, which was then being enforced against them at face value, which failure may have caused the plaintiffs to lose the underlying case. Accordingly, I respectfully dissent from the majority opinion.

I first set forth some of the principles I deem relevant to our inquiry. "In general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages. . . . When proof of the existence of an attorney-client relationship is conceded, proof of the second element, a wrongful act or omission, normally involves expert testimony as to the existence of a professional duty on the part of the attorney and a departure from it by some negligent act or omission. . . .

"As to causation: In legal malpractice actions, the plaintiff typically proves that the defendant attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the defendant not been negligent. This traditional method of presenting the merits of the underlying action is often called the case-within-a-case." (Citations omitted; internal quotation marks omitted.) *Lee* v. *Harlow, Adams & Friedman, P.C.*, 116 Conn. App. 289, 297, 975 A.2d 715 (2009).

Here, Terracino and Guardian Systems, Inc., had alleged that their former attorneys, Gordon and his law

of collateral estoppel. See *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d 416 (2009).

firm, Gordon and Hiller, had committed legal malpractice by failing to exercise due diligence in discovering evidence of the note and guarantee purchase by Rossman or his agents, which would have altered the outcome in the underlying litigation that had resulted in a judgment against the plaintiffs and in favor of Fairway Asset Management, Inc. (Fairway), on the note guaranteed, inter alia, by the plaintiffs and by Rossman. They also alleged that their former attorneys' negligence resulted in a finding in favor of Rossman on the present plaintiffs' cross claim against him in the underlying litigation for breach of fiduciary duty on the basis of their joint status as coguarantors. In granting the defendants' motion for summary judgment on the malpractice complaint, the court held that the plain language of the guarantee acted as a waiver of the very defenses that the new evidence of Rossman's acquisition of the note would have allegedly supported. The majority agrees with this holding and states that the plaintiffs never addressed "the terms of the guarantees to which they had subscribed" in an effort to avert summary judgment. My own review of the record and of the briefs in this case leads me to a different conclusion.

On the contrary, the plaintiffs did address the terms of the note, stating that they did not contest that the terms were binding when the note and guarantee *were held continually by a third party.* They argued, however, that "once the note is acquired and owned by a coguarantor, rather than an independent third party, then the law of equity applies, rather than contract law, not only in the state of Connecticut but also in every other state that has considered this issue." I agree.

I next turn to a review of the weight of authority. "In general, a guarantor's obligation to the creditor is discharged when the creditor and a coguarantor agree that the coguarantor has fully satisfied the underlying principal obligation." 38 Am. Jur. 2d 951, Guaranty § 91

(1999), citing *Bank of the West* v. *Burlingame*, 134 Or. App. 529, 895 P.2d 1367 (1995), review withdrawn, 322 Or. 490, 909 P.2d 162 (1996). "However, the remaining guarantor is not discharged by the creditor's settlement agreement with a coguarantor if the settlement agreement provides that the coguarantor's payments do not satisfy the amounts due and [the creditor] retains rights to proceed against the remaining guarantor." 38 Am. Jur. 2d 951, supra, § 91.

"A guarantor may purchase or take an assignment of a guaranteed debt, as opposed to simply paying or settling the payment of the note with the creditor. If the guarantor actually purchases the note, he may proceed against the coguarantors for the deficiency pursuant to the terms of the guaranty, rather than suing for contribution. In such cases, the guarantor who takes an assignment of the debt may collect no more from the coguarantors than the pro rata contribution amounts." Id., § 121.

"A guarantor of a principal debtor's obligation on a note is not necessarily precluded from purchasing the note, despite [the] existence of co-guarantors. [*Mandolfo* v. *Chudy*, 5 Neb. App. 792, 564 N.W.2d 266 (1997), aff'd, 253 Neb. 927, 573 N.W.2d 135 (1998).] Under some circumstances, a guarantor who pays the principal indebtedness and takes an assignment of the note representing such indebtedness may enforce against co-guarantors the guaranty of the note. [*Estate of Frantz* v. *Page*, 426 N.W.2d 894 (Minn. App.), review denied, September 16, 1988; *Byrd* v. *Estate of Nelms*, 154 S.W.3d 149 (Tex. App. 2004), review denied, 2005 Tex. LEXIS 468 (Tex. June 17, 2005).] However, it has been stated that the guarantor is limited in his or her recovery to only the contributive share of the other co-guarantors. [*Byrd* v. *Estate of Nelms*, supra, 149.] There is also authority [however] that a co-guarantor cannot buy the principal obligation and recover on the note." 38A C.J.S.

762, Guaranty § 160 (2008), citing *Koeniger* v. *Lentz*, 462 So. 2d 228 (La. App. 1984), on appeal after remand, 487 So. 2d 622 (La. App. 1986); *Curtis* v. *Cichon*, 462 So. 2d 104 (Fla. App. 1985).

"The right of a guarantor who has paid the obligation to claim contribution is assignable. [*Poulos* v. *Mendelson*, 491 A.2d 1172 (Me. 1985); *Mediclaim, Inc.* v. *Groothuis*, 38 App. Div. 3d 730, 834 N.Y.S.2d 200 (2007).] The assignment of an underlying note and guaranty agreement to a guarantor does not change the status of the guarantor in relation to his or her co-guarantors, which relationship restricts recovery on the guaranty to each co-guarantor's contributive share. [*Lavender* v. *Bunch*, 216 S.W.3d 548 (Tex. App. 2007).]" 38A C.J.S. 765, supra, § 161.

"As a general rule, a guarantor who has paid more than his or her proportionate share of the debt guaranteed may obtain from his or her co-guarantors contribution of any amount sufficient to make the payment of all equal or sufficient to satisfy the requirements of an agreement fixing the relative liability of the guarantors. . . . [This] rule is based on the equitable principle that, where several are equally liable for the same debt and one is compelled to pay the whole, he or she may have contribution against the others to obtain the payment of their respective shares. The doctrine is applied to prevent one of two or more guarantors from being obligated to pay more than his or her fair share of a common burden, or to prevent one guarantor from being unjustly enriched at the expense of another." 38A C.J.S. 763–64, supra, § 161, citing, inter alia, *Thomas* v. *Jacobs*, 751 A.2d 732 (R.I. 2000). "In general, a guarantor may not deal with a creditor or guarantee in such a manner as to profit by [the] transaction to [the] detriment of [a] co-guarantor." 38A C.J.S. 762, supra, § 160, citing *Mandolfo* v. *Chudy*, supra, 5 Neb. App. 792. "When one guarantor buys a judgment, that guarantor can control

the judgment only for the purpose of being reimbursed for what was paid for the judgment." 38A C.J.S. 762, supra, § 160, citing *Rathbone* v. *Ward*, 268 Ga. App. 822, 603 S.E.2d 20, cert. denied, 2004 Ga. LEXIS 1070 (Ga. November 22, 2004).

"Contribution is a payment made by each, or by any, of several having a common interest or liability of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others. . . . This doctrine affording reimbursement *is based not on contract* but upon the equitable principle that those voluntarily assuming a common burden should bear it equally. But it is essential to the application of the principle that the party claiming contribution be in aequali jure . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Fidelity & Casualty Ins. Co.* v. *Sears, Roebuck & Co.*, 124 Conn. 227, 231–32, 199 A. 93 (1938).

After thoroughly reviewing the doctrine of equitable contribution, I agree with the plaintiffs that if they are able to prove the allegations of their complaint, the doctrine applies in this case, and they should have been given the opportunity to proceed to trial. If the plaintiffs are able to prove that but for the defendants' lack of due diligence, it would have been shown in the underlying litigation that Rossman had settled the debt with Fairway by purchasing the $270,000 note for $30,000, the plaintiffs may have been successful in limiting Fairway's recovery on the basis of the equitable contribution doctrine.[2] I do not agree with the majority that the language

---

[2] I also note that once a negotiable instrument note is in default, any subsequent entity that obtains the note after the default is not a holder in due course; it takes the instrument subject to all defenses. See *Myrtilles, Inc.* v. *Johnson*, 124 Conn. 177, 181, 199 A. 115 (1938) ("[i]n the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable" [internal quotation marks omitted]). A holder of an instrument is a holder in due course if "[t]he holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue . . . .") General Statutes § 42a-3-302 (a) (2).

of the joint and several guarantees applies to the exclusion of this equitable doctrine.

Furthermore, if we were to disregard the applicability of the equitable contribution doctrine, as the majority would have it, and limit review only to the contract language, I do not think the defendants would fare any better at the summary judgment stage because the allegation of Rossman's note purchase still would make a difference in the outcome of the case. Employing a plenary standard of review to the subject guarantees, despite the plaintiffs' failure to raise the clear wording of paragraph 2 (b) of the commercial guarantee in defense of the motion for summary judgment or on appeal, I am inclined to conclude that pursuant to this paragraph, once Rossman acquired full rights to the note and guarantee, the guarantee no longer was enforceable because the indebtedness had been satisfied by a coguarantor, whom, I point out, also had signed an identical commercial guarantee.

Paragraph 2 (b) of the guarantee specifically states: "This [g]uaranty is irrevocable and shall continue in full force and effect until the [i]ndebtedness has been fully and finally paid to the [b]ank." I would conclude that if, with the aid of proper and diligent discovery, the plaintiffs are able to prove that Rossman acquired the note, then the indebtedness to the bank was satisfied at that point. I also conclude that even if one were to come to the conclusion that the guarantee was not extinguished by its terms when Rossman acquired the note as alleged, the doctrine of equitable contribution would limit Rossman's rights and the rights of anyone to whom he subsequently assigned the guarantee. See *Leonard* v. *Bailwitz*, 148 Conn. 8, 13, 166 A.2d 451 (1960) (assignee stands "in the shoes of his assignor, with the same rights").

The majority also seems to emphasize that the plaintiffs "concede in their reply brief that the language

of the guarantees, absent acquisition of the note by a coguarantor, would afford the noteholder full enforcement rights against the plaintiffs." I certainly do not view this as a "concession," but, rather, it is exactly the point the plaintiffs are making on appeal; a coguarantor did acquire the note, and, therefore, the future noteholder, Fairway, should not have been afforded full enforcement rights against the plaintiffs because, as the assignee, Fairway could have no greater rights than Rossman. This also, in part, is the argument the plaintiffs made in contesting the defendants' motion for summary judgment. They further argued that if the defendants in the present action had exercised due diligence and discovered that Rossman had purchased the note, Fairway would not have been successful in fully enforcing the note against the plaintiffs. I agree with the plaintiffs and would reverse the summary judgment of the trial court.

Under the majority's reasoning, once Rossman, a coguarantor, settled with the bank and purchased the $270,000 note for $30,000, Rossman, himself, could have sought a judgment against any of the other coguarantors for the full amount of the note. This simply does not comport with the doctrine of equitable contribution, nor does it comport with my close reading of the guarantees in this case. If this were the law, a coguarantor could purchase the note from a creditor for a deep discount from face value, proceed against another coguarantor for the full amount and escape any liability. Whomever succeeded in being first to get the creditor to make a deal would get a windfall at the expense of other coguarantors. This certainly cannot be the law. As stated previously, the doctrine of equitable contribution is applied, in part, "to prevent one guarantor from being unjustly enriched at the expense of another." 38A C.J.S. 764, supra, § 161, citing, inter alia, *Thomas* v. *Jacobs*, supra, 751 A.2d 732. "In general, a guarantor

may not deal with a creditor or guarantee in such a manner as to profit by [the] transaction to [the] detriment of [a] co-guarantor." 38A C.J.S. 762, supra, § 160, citing *Mandolfo* v. *Chudy*, supra, 5 Neb. App. 792.

I also find instructive a recent decision of this court. In *Lestorti* v. *DeLeo*, 114 Conn. App. 50, 968 A.2d 941, cert. granted, 292 Conn. 914, 973 A.2d 663 (2009), the relevant defendant (hereinafter referred to as the defendant) had filed a counterclaim for equitable contribution related to an agreement of the plaintiff and the defendant to guarantee a note that was secured by a mortgage. Id., 52. The bank had named both the plaintiff and the defendant in a foreclosure action that arose out of the default on the note that the plaintiff and the defendant had guaranteed. Id. Because of a failure by the bank to make proper service on the plaintiff, however, the case was dismissed as to him, but it proceeded against the defendant, who was found liable in the foreclosure action. Id. The defendant then entered into a settlement with the bank for $275,000 as a stipulated deficiency judgment on the debt; id.; which was more than $1,050,000. Id., 56. In the case that was the subject of the appeal, the defendant had filed a counterclaim against the plaintiff seeking one-half of the $275,000 as the plaintiff's contributive share as a coguarantor of the original debt. Id., 53. The trial court granted the plaintiff's motion to strike the defendant's counterclaim and rendered judgment thereon. Id.

On appeal, we concluded that the court properly had granted the plaintiff's motion to strike because the defendant had no right to equitable contribution from the plaintiff, in part, because the payment made by the defendant was less than the defendant's own proportionate share of the outstanding obligation on the note. Id., 56. We explained: "The right of action for contribution, which is equitable in origin, arises when, as between multiple parties jointly bound to pay a sum of

money, one party is compelled to pay the entire sum. That party may then assert a right of contribution against the others for their proportionate share of the common obligation." (Internal quotation marks omitted.) Id., 54. "As between cosureties, each cosurety is a principal obligor to the extent of its contributive share and a secondary obligor to the extent of its remaining obligation. . . . The rights of contribution and defenses are then the same as between secondary obligors and principal obligors. . . . If there is no other operative principle applicable, a cosurety's contributive share is the aggregate liability divided by the number of cosureties." (Citations omitted.) Id., 55.

In the *Lestorti* case, "the defendant's contributive share was presumptively half of the obligation, which at the time of the deficiency judgment was more than $1,050,000. His payment of $275,000 would not appear in the circumstances to be anything other than a portion of his own contributive share." Id., 56. We further explained that our courts have adopted the doctrine of equitable contribution. Id., citing *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 714, 826 A.2d 107 (2003). "In *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, supra, 714, for example, our Supreme Court held, in the context of asbestos litigation, that where one insurer has paid the entire obligation of a number of obligors, it may assert a right of contribution against other obligors for their proportionate share of the entire obligation. See also *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, 66 Conn. App. 397, 408, 784 A.2d 970 (2001) (*Lavery, C. J.*, dissenting), appeal dismissed, 262 Conn. 358, 814 A.2d 377 (2003). More venerable authority such as *North* v. *Brace*, 30 Conn. 60 (1861), and *Security Ins. Co.* v. *St. Paul Fire & Marine Ins. Co.*, 50 Conn. 233 (1882), support the proposition that where one of several

cosureties pays the obligations of all the cosureties, the paying cosurety has a right of contribution as to the others. The right of equitable contribution from any particular cosurety is limited, however, to the share of the total owed by that cosurety. *Security Ins. Co.* v. *St. Paul Fire & Marine Ins. Co.*, supra, 244–46." *Lestorti* v. *DeLeo*, supra, 114 Conn. App. 56–57.

In addition to the *Lestorti* case and the treatises previously cited, I have looked to case law from other jurisdictions that have considered this issue or issues similar thereto, all of which fully support the plaintiffs' position in this case. Despite a thorough search, I have not found cases or treatises that support the position of the defendants. The cases and treatises that I have found all state that once a coguarantor holds the note, free from the creditor, that coguarantor can get nothing more than a pro rata share of the debt from other coguarantors, and this generally is so only if he or she has paid more than his or her pro rata share in purchasing the note from the creditor. I have not found cases that support the majority decision, and I am mindful that neither the defendants nor the majority cite to any.

For example, in *Mediclaim, Inc.* v. *Groothuis*, supra, 38 App. Div. 3d 730, the Appellate Division of the Supreme Court of New York upheld the trial court's granting of the defendants' motion for summary judgment and dismissal of the complaint. The Appellate Division explained as follows: The plaintiff, "an assignee of a mortgage note and guarantees . . . [had] commenced this action against the defendants, as guarantors, to enforce the guarantees and to recover payment on the note. The defendants established their prima facie entitlement to judgment as a matter of law by demonstrating that the real purchaser of the note was not the plaintiff, but [was] . . . [another] coguarantor of the note. All of the funds used by the plaintiff in acquiring the note came from [this coguarantor]. As

the note was paid in full by a co-guarantor, the only cause of action available was one by the co-guarantor . . . to recover for contribution against the defendants. Contrary to the plaintiff's contention, it cannot recover pursuant to a cause of action for contribution as it [was] not a co-guarantor of the note . . . . Only a co-guarantor who has paid more than his or her proportionate share of the common liability is entitled to contribution from the other co-guarantors . . . ." (Citations omitted.) Id., 731. The court further explained that the plaintiff had failed to offer any evidence that it was the true party in interest rather than a "mere vehicle" for the other coguarantor. Id.

In *Lavender* v. *Bunch,* supra, 216 S.W.3d 548, four founders of a corporation, Lavender, Lively, Coburn and Bunch, separately guaranteed an $80,000 promissory note of the corporation. Id., 550. "The nature of the instruments given by all of the four persons were absolute guaranties"; id., 552; and each person "was jointly and severally liable . . . ." Id. "Under the terms of the guaranty agreements given by each of the four men . . . the holder could proceed against the corporation, all of the four guarantors, or any one or more of the guarantors without the joinder of the others." Id. Bunch also pledged a $100,000 certificate of deposit as security. Id., 550.

Bunch later purchased the note, released the certificate of deposit he had posted as security and released his own guarantee. Id., 550, 553. He then sought to collect on the guarantees in the amount of $80,000 plus interest from the remaining coguarantors. Id., 550. The trial court rendered judgment permitting Bunch to collect fully on the guarantees. Id., 551. On appeal, the Court of Appeals of Texas reversed the judgment of the trial court, holding that Bunch, as a coguarantor, could only collect from his coguarantors their proportionate share of the debt. Id., 554. The court explained

that although Bunch, as an assignee of the note and guarantees, had the right to release the $100,000 surety, he did not have the right to collect his pro rata share of the debt from his coguarantors. Id., 553. "When Bunch acquired the promissory note . . . he did not trade the hat of guarantor of the note for that of holder of the obligation; he wore both hats. As between the coguarantors, he still maintained some liability to his coguarantors for the satisfaction of the debt." Id. The court further explained that "the question of liability of coguarantors to each other has a long history. For well over a hundred years, it has been a general and familiar rule of law that, as among coguarantors, each will bear his proportional part of the burden to the effect that should one of them pay more than his proportional part, the others will contribute equally to indemnify him for any amount in excess of his proportional part." (Internal quotation marks omitted.) Id., 554. Accordingly, the Court of Appeals of Texas reversed the judgment of the trial court and remanded the case with direction that Bunch could only recover judgment for three-fourths of the jointly owed debt. Id.

In *Estate of Frantz* v. *Page*, supra, 426 N.W.2d 894, the creditor bank assigned its rights under the note, mortgage and guarantees to the estate of one of the coguarantors, Frantz, after receiving payment of the balance of the outstanding note from the estate. Then, acting as the creditor-assignee, the estate brought an action against the other coguarantors for the amount paid on the note minus the net value of some property received. One of the coguarantors argued that the estate could only sue him for a pro rata contribution, not for the entire amount paid on the note. Id., 896–98. The appeals court, while agreeing with the trial court that the estate could enforce the note and guarantees as a creditor against the jointly and severally liable guarantors, vacated a portion of the judgment and remanded

the case to the trial court with instructions to "reopen the record to take evidence on the ability of each of the guarantors to respond to the debt and then to apply the law of contribution in determining the estate's proportionate liability." Id., 902.

In *Byrd* v. *Estate of Nelms*, supra, 154 S.W.3d 149, the Nelms Partnership (Nelms), a coguarantor of a promissory note, purchased the note and guarantees to the bank and then sought to collect from other coguarantors the full amount of the debt. Id., 153–54. The court held that Nelms could not collect more than the coguarantors' proportionate share, "despite 'joint and several' language in the guaranty agreement at issue . . . ." Id., 153. The court explained that "contribution is an equitable remedy that implies a contract between guarantors ensuring that in the event one of the guarantors is called to pay the debt, the other guarantors would contribute their proportionate share, and no more. . . . The assignment of an underlying note and guaranty agreement to a guarantor does not change the status of the guarantor in relation to his co-guarantors. . . . Therefore, as a matter of law, the relationship between guarantors restricts recovery to their contributive share." (Citations omitted.) Id., 164. The court further observed that "[c]ommon sense dictates this result. All . . . sureties agree to be liable for full payment of the note if the principal debtor defaults and are further liable for contribution to the cosurety who actually pays the creditor. Thus, each surety's ultimate liability may be fixed at his virile share of the note. If one of the several sureties, as here, could purchase the note . . . and then collect the full amount of the note from a co-surety, the purchasing surety would thereby escape liability for his virile portion of the debt. If [the appellants] were able to succeed on their theory, then upon the debtor's default, every surety would race to the bank to purchase the note. The Civil Code does not

contemplate that a surety's liability should be premised upon the fortuity of being the first to purchase the debtor's note." (Internal quotation marks omitted.) Id., 165. The court also explained that while some "jurisdictions disagree on whether a guarantor can purchase the underlying note and sue his co-guarantors as an assignee, [even those jurisdictions] agree that the guarantor is limited in his recovery to only the contributive share of the other co-guarantors." Id., 164.

In *Thomas* v. *Jacobs*, supra, 751 A.2d 733, the plaintiff brought an action for contribution against his coguarantor after reaching a settlement with the bank on a note, which they had jointly and severally guaranteed, for a dollar amount that was less than his pro rata share of the debt. The court, adopting the provision of the Restatement of Restitution § 82 (1) (1937), held that "one guarantor is entitled to contribution from his or her coguarantor(s) only when he or she has discharged more than his or her proportionate share." Id., 734. This is true, the court explained, under the doctrine of equitable contribution, which "is applied to prevent one of two or more guarantors from being obliged to pay more than his or her fair share of a common burden, or to prevent one guarantor from being unjustly enriched at the expense of another." Id. The court did note, however, that there is an exception to this rule that "allows contribution among coguarantors when one coguarantor has paid less than his or her fair share of the debt and has secured a full release from the creditor for any other co-guarantor(s)." Id., 734 n.1.

In *Franco* v. *Peoples National Bank*, 39 Wn. App. 381, 382–83, 693 P.2d 200 (1984), the plaintiffs, the Francos and the Andersons, sought, inter alia, contribution from the defendants, the Leamers and the Kristiansens, coguarantors on a corporate debt to Peoples Bank (bank), which each of them had guaranteed personally and unconditionally. After the debtor had defaulted on the

loan to the bank, the Francos and the Andersons entered into an agreement with the bank to make the necessary payments on the debt in order to avoid a lawsuit. Id., 383–84. The bank then filed suit against only the Kristiansens and the Leamers on their personal guarantees, which they later settled "in full and complete satisfaction of any claims of Peoples Bank against their personal guaranties." (Internal quotation marks omitted.) Id., 384. The Francos and the Andersons, however, entered into a new agreement with the bank to retire the outstanding debt. Id. Afterward, the Francos and the Andersons sought contribution from the Kristiansens and the Leamers for the alleged excess over their pro rata share paid to the bank. Id., 385. The Kristiansens and the Leamers argued that because the bank released them from their guarantees without any reservation of rights against them, they were discharged from any contribution obligation for which they might have been liable. Id., 386. Disagreeing, the Court of Appeals explained: "The doctrine of contribution among sureties or guarantors is based upon the equitable principles that, where several parties are equally liable for the same debt and one is compelled to pay the whole of it, he may have contribution against the others to obtain from them the payment of their respective shares. The doctrine is founded on an implied rather than an expressed contract. The right to contribution is not based upon the instrument on which the guarantors have become liable, but is based upon the idea that, when the guarantors signed such instrument, they impliedly agreed that if there should be any liability each would contribute his just portion. The mere fact that a right of contribution exists, necessarily implies that the instrument out of which the liability grows has been paid and extinguished by one for the benefit of all." (Internal quotation marks omitted.) Id.

In *Mandolfo* v. *Chudy,* supra, 5 Neb. App. 792, the Nebraska Court of Appeals stated that the issue in the

case was "whether the plaintiffs-appellees, Joseph Mandolfo and Nancy Mandolfo, two of six coguarantors of a $325,000 promissory note, having received an assignment of said note and its guaranties, may recover the entire principal sum and accrued interest from the defendant-appellant, John P. Chudy, also a coguarantor, or is the Mandolfos' recovery from Chudy limited to Chudy's one-sixth pro rata share of the principal and interest due on the note. In short, does the doctrine of equitable contribution limit the Mandolfos' recovery." Id., 793. The court explained that Chudy had executed a guarantee that was "separate and distinct" from the guarantee executed by the remaining guarantors, but that each guarantee guaranteed the entire principal of $325,000. Id. After the debtor had defaulted on the note, the Mandolfos negotiated with the bank to purchase the note: "This transaction was . . . viewed by both parties as a 'purchase' of the note rather than 'payment' of it." Id., 794. The Mandolfos then brought suit against Chudy for payment of the balance of the note, which was $320,200.64, plus interest. Id., 795. The trial court found in favor of the Mandolfos and held that when they purchased the note, their relationship with Chudy changed and the Mandolfos became the creditor. Id. The trial court awarded the Mandolfos the full amount that they had paid for the note minus their one-third pro rata obligation on their guarantee and other offsets not relevant here. On appeal, Chudy argued that his relationship with the Mandolfos was not changed by their purchase of the note and that the Mandolfos could only recover from Chudy his one-sixth pro rata share of the underlying obligation. Id., 796.

The Court of Appeals stated: "In general, a guarantor may not deal with a creditor or guarantee in such a manner as to profit by the transaction to the detriment of a coguarantor. . . . It has been held, however, that

a guarantor of a note representing a principal indebtedness is not necessarily precluded from purchasing such note, notwithstanding the existence of coguarantors." (Citation omitted.) Id., 796. Nevertheless, the court explained, "[w]here there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his co-sureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens. The same doctrine applies, and the same remedy is given, between all those who are jointly, or jointly and severally, liable on contract or obligation in the nature of contract." (Internal quotation marks omitted.) Id., 797. The court further explained that "the Mandolfos and Chudy started as coguarantors. The fact that the Mandolfos attempted to maneuver themselves into a different position by becoming the creditors does not erase their coguarantor status with Chudy. At the heart of the matter is the fact that the Mandolfos' action in voluntarily buying the note from [the creditor] does not affect or expand Chudy's liability as a coguarantor. . . . [O]ne guarantor cannot expand the liability of another coguarantor by taking an assignment of the underlying debt, absent proof of insolvency of other guarantors." (Citation omitted.) Id., 798. Accordingly, the Court of Appeals reversed the judgment of the trial court and remanded the case with direction that Chudy, in relevant part, was obligated for only his one-sixth pro rata share of the underlying obligation. Id., 802.

The Court of Appeals decision was upheld by the Supreme Court of Nebraska; *Mandolfo* v. *Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998); in which the Supreme Court considered whether "the transferee of a note and guaranty can enforce the guaranty in the same manner

that the transferee could enforce the note" under the Uniform Commercial Code. Id., 930. The court held that "the assignment of the note and its guaranties does not enhance the Mandolfos' rights against Chudy. Although the Mandolfos may proceed as creditors on the promissory note, the assignment does not alter their status as coguarantors of the note. Although § 3-201 (1) [of the Uniform Commercial Code] vests in the transferee any right of the transferor to enforce the instrument, the guaranty under which Chudy's rights are determined is not a negotiable instrument and is not subject to the provisions of § 3-201. . . . [T]he limitation upon the Mandolfos' recovery against a coguarantor does not conflict with their rights under the Uniform Commercial Code to enforce the note against [the original debtor]. The assignment of the note and the guaranty does not change the Mandolfos' status as coguarantors with Chudy." (Citation omitted.) Id., 931–32. Concluding that the guarantee and the note could not be considered together to satisfy the elements of a negotiable instrument and that the guarantee alone was not a negotiable instrument and, therefore, was not covered by the Uniform Commercial Code, the Supreme Court affirmed the decision of the Court of Appeals. Id.

In *Albrecht* v. *Walter*, 572 N.W.2d 809 (N.D. 1997), five coguarantors who had satisfied a debt and been assigned the note and guarantees thereof brought suit on the note and the guarantee of a sixth coguarantor, seeking contribution. Id., 811–12. The court explained: "Some courts have held a guarantor may pay off an obligation, take an assignment of guaranty contracts and the promissory note, and enforce a co-guarantor's guaranty. . . . The assignment of an instrument vests in the transferee the same rights the transferrer had therein. . . . However, a paying guarantor taking an assignment may not recover from his co-guarantors more than their proportionate shares of the amount paid." (Citations omitted; internal quotation marks

omitted.) Id., 812. "Other courts have held a paying guarantor may not sue on the note, but is limited to contribution." Id. In determining whether the plaintiffs, coguarantors, were entitled to maintain an action on the note and guarantee against the sixth coguarantor, the court held that "a coguarantor may purchase an assignment of a note and the guaranties, but the initial relationship as coguarantors will operate as a matter of law to restrict the recovery and will govern the rights of the coguarantors." Id., 813.

I agree with these jurisdictions and the treatises previously cited and am persuaded that the defendants were not entitled to summary judgment. If the plaintiffs are able to prove that Rossman acquired the note, and that the reason this was not brought out in the Fairway case was because of the defendants' malpractice, the plaintiffs might be successful in this malpractice case. Of course, they would have to prove a likelihood of success in the underlying Fairway case, but if Rossman did acquire the note and guarantees, the doctrine of equitable contribution would have been applicable to the Fairway case, thereby substantially limiting the financial exposure of the plaintiffs. Additionally, if Rossman was the purchaser of the note and guarantees, paragraph 2 (b) of the plaintiff's commercial guarantee may have been implicated and the guarantee may have been extinguished by its own terms. Accordingly, I would reverse the summary judgment of the trial court, and, therefore, I respectfully dissent.

---

\* The listing of judges reflects their seniority status on this court as of the date of oral argument.